WILLIAM S. REILLY *vs.* LOCAL 589, AMALGAMATED TRANSIT
UNION & another[1]
(and a companion case[2]).

Suffolk. March 18, 1986. — July 28, 1986.

Present: PERRETTA, CUTTER, & WARNER, JJ.

*Arbitration*, Scope of arbitration, Authority of arbitrator, Vacating award, Damages. *Practice, Civil*, Statement of agreed facts, Case stated, Judgment, Relief from judgment, Joinder of claims. *Labor*, Fair representation by union, Apportionment of damages, Collective bargaining agreement, Arbitration, Grievance procedure, Damages. *Damages*, Fair representation by union, Interest, Attorney's fees. *Indemnity. Interest. Judgment*, Relief from judgment. *Res Judicata*.

In a suit by a former employee of the Massachusetts Bay Transportation Authority seeking to compel the authority and a labor union representing the authority's employees to arbitrate certain grievances of the employee against the authority, the record on appeal did not support the authority's contention that there was error in the entry of partial summary judgment on the issues between the employee and the union. [568-569]

In a suit by a former employee of the Massachusetts Bay Transportation Authority seeking to compel the authority and a labor union representing employees of the authority to arbitrate certain grievances of the employee against the authority, the authority was not entitled on appeal to argue that a stipulation between the employee and the union was insufficient by itself to establish that there had been a breach of the union's duty of fair representation to the employee, where, during hearings in the Superior Court, the authority had failed to offer evidence to contradict the stipulation, and where, following arbitration proceedings in which the arbitrator apparently made the erroneous assumption that adequacy of proof of the union's breach had been considered in the Superior Court, the authority made no motion to vacate the arbitrator's award pursuant to G. L. c. 150C, § 11(*b*). [569]

In a suit brought by a former employee of the Massachusetts Bay Transportation Authority to compel the authority and a labor union to arbitrate certain grievances of the employee, the record did not support the author-

---

[1] Massachusetts Bay Transportation Authority.

[2] Massachusetts Bay Transportation Authority *vs.* John J. Gallahue, Jr., & others.

ity's contention that failure by the union and the employee to disclose that they had entered into a release and indemnity agreement when they stipulated that the union had breached its duty of fair representation to the employee amounted to a fraud upon the court justifying relief from an order for partial summary judgment on the issues between the employee and the union, an order sending the employee's grievances against the authority to arbitration, and, perhaps, final judgment confirming the arbitrator's award. [570-572]

In a suit by a former employee of the Massachusetts Bay Transportation Authority to compel the authority and a labor union to arbitrate certain grievances of the employee, in which the employee and the union had stipulated that the union had breached its duty of fair representation to the employee by failing to process his grievances, the authority was not entitled to a hearing on that issue, even though it could have affected an order to arbitrate the grievances, where the authority failed to raise the question of arbitrability by a motion to vacate the arbitrator's award. [572]

Discussion of principles according to which damages awarded to an employee by an arbitrator under a collective bargaining agreement are to be apportioned between an employer and a labor union. [572-575]

In a case brought by an employee of the Massachusetts Bay Transportation Authority to compel the authority and a labor union to arbitrate certain grievances of the employee, in which an arbitrator awarded damages to the employee from the authority without considering apportionment of damages between the authority and the labor union, and in which an "agreed statement of facts" was not an adequate basis for this court to determine the question of apportionment, remand to the trial court was necessary for appropriate proceedings to resolve the question. [575-576]

Where an arbitrator in a case under a collective bargaining agreement had been ordered to "assess the . . . damages due" to an employee and had found it "not appropriate . . . to award interest" and had denied any award of attorney's fees, the employee was not entitled to the award of prejudgment interest or attorney's fees. [576-577]

In a labor case which had been submitted to an arbitrator, the judge properly determined that interest on the award was to commence on the date that the employee's motion to vacate the arbitrator's award of damages was denied, which was the earliest date on which the award became definitive and enforceable. [577]

On appeal from a judgment confirming an arbitration award pursuant to a collective bargaining agreement, and on report of a question of law by the judge in a related case brought by the employer against the labor union, this court affirmed the aggregate amount of damages awarded, but remanded the cases for appropriate proceedings respecting apportionment of the damages between the employer and the union and respecting indemnification pursuant to an agreement between the union and the employee. [578-579]

A suit by a former employee of the Massachusetts Bay Transportation Authority to compel the authority and a labor union to arbitrate certain grievances of the employee did not bar a subsequent action by the authority seeking to hold the union responsible for, or liable to contribute to, any damages recovered by the employee from the authority, where the second action was brought after the authority became aware of a release and indemnification agreement between the union and the employee, and where the issues raised by the authority in the second action had never been litigated fully in the first action, either before the court or the arbitrator. [579]

BILL IN EQUITY filed in the Superior Court on August 3, 1973.

After various proceedings before *James P. Lynch, Jr.*, J., *William G. Young*, J., *George N. Hurd, Jr.*, J., *John T. Ronan*, J., *Edith W. Fine*, J., and *Robert L. Steadman*, J., entry of final judgment was ordered by *Thomas R. Morse, Jr.*, J.

CIVIL ACTION commenced in the Superior Court Department on May 8, 1981.

A question of law was reported to the Appeals Court by *Thomas R. Morse, Jr.*, J.

*Carol A. Buckley (Lucille M. Ponte* with her) for Massachusetts Bay Transportation Authority.

*Joseph A. Gordon* for William S. Reilly.

*John J. McMahon* for Local 589, Amalgamated Transit Union & others.

CUTTER, J.  These two proceedings arise out of the discipline, hereafter described, of the plaintiff in the first case, Reilly, and his later discharge on September 26, 1972, by a codefendant in the first case, Massachusetts Bay Transportation Authority (MBTA). In that case, a bill in equity brought August 3, 1973, Reilly sought to compel Local 589 (Union) "to arbitrate in good faith" his grievances against the MBTA and to require the MBTA to arbitrate them. The second proceeding, a complaint filed May 8, 1981, by the MBTA against the officers of the Union, sought (see part II of this opinion) to hold the Union responsible for, or liable to contribute to, any damages recovered by Reilly from the MBTA.

## I. The Circumstances of Reilly's Alleged Grievances.

Reilly on December 3, 1971, was employed by the MBTA as a rapid transit motorman on the line then terminating at Harvard Square. He had been the motorman on a train leaving the Harvard Square subway station for Park Street (and points to the southeast) on what appears (from accounts in the record) to have been a somewhat "wild train" trip. On testimony by Reilly himself at the only hearing (that before Superior Court Judge No. 3, mentioned below) of which the record contains a transcript, it appears that Reilly was interviewed on December 10, 1971, by at least two MBTA officials about his train trip. On December 17, he was told in writing of the charges against him. On January 12, 1972, Reilly was suspended for five days, was advised that he had "shown a complete disregard for responsibilities . . . assumed when . . . [he] advanced to train service," and was "disqualified permanently from all train service and . . . [demoted] to a [c]ollector's position."[3]

Reilly, after his suspension, did not return to work in his reduced position as collector. He testified that he made at least an oral claim of a grievance to the Union on the day following receipt of notice of his five-day suspension, went home to bed, sick, and was hospitalized from February 1 to March 5, 1972. Reilly's grievance concerning his suspension then followed the course set out in the margin.[4]

---

[3] Reilly apparently claimed before the arbitrator, who heard Reilly's grievances in late 1980 and made one of two awards on January 14, 1981, that (at least with respect to Reilly's ultimate discharge on September 26, 1972, and also with respect to the events of December 3, 1971) there was failure by the MBTA to comply with the time schedule (for discipline investigations and complaints) set out in a 1966 basic collective bargaining agreement between the MBTA and the Union, still in effect in 1971.

[4] The MBTA's general manager heard his grievance on April 18, 1972, and denied it on May 22, 1972. The MBTA's board of directors upheld that decision on June 14, 1972. A Washington attorney (who then represented the Union nationally) concluded, by a letter of August 17, 1972, that he could not recommend arbitration. Reilly objects to the inclusion of that letter in the record appendix. He also objects to the inclusion of an apparently uncontradicted affidavit (undated but filed with the Superior Court clerk on November 25, 1977) by Joseph Murphy, business agent of the Union, because of references therein to Reilly's alleged (then past but

The Union's executive board in August, 1972, declined to submit to arbitration Reilly's grievances relating to his suspension, demotion, and discharge.[5] As a consequence, the first bill in equity was filed by Reilly.

## II. THE 1973 BILL IN EQUITY.

To the original 1973 bill, the defendants filed demurrers which were sustained on December 10, 1973, by a Superior Court judge (Judge No. 1). An amended complaint was filed by leave of court on August 22, 1974. Thereafter no further action is shown by the docket until May 20, 1977, when Reilly obtained leave to file a second amended complaint, which itself later was amended. The Union and the MBTA each filed an answer in June, 1977. On November 25, 1977, the affidavit

---

extensive) complaint record. Section 104(A)(5) of the basic 1966 collective bargaining agreement purported to prohibit the MBTA from considering, before taking any disciplinary action, incidents in an employee's work record other than those which took place in a 24-month period immediately prior to the incident currently the subject of a grievance. In the present case this provision, as applied, operated to keep from consideration highly questionable incidents relating to Reilly's past operation of buses and trains for the MBTA. The record does not show whether the MBTA could successfully have declined to agree to such a provision preventing consideration of relevant past conduct by its employees. It is not shown that either document was used during the subsequent arbitration proceedings or trial.

Reilly, on August 24, 1972, finally appeared before the Union's general membership pursuant to the Union's by-laws. The members took no action to prosecute the grievance. Reilly's efforts to obtain arbitration by direct recourse to the MBTA (instead of through the Union) were not successful, nor were his efforts to persuade the National Labor Relations Board and the Massachusetts Labor Relations Commission to issue complaints.

[5] By September 7, 1972, Reilly was still on the MBTA sick list. On that day, he was requested by letter to report to the MBTA's doctor on or before September 14 to be examined to determine if he was qualified "to return to work as a [c]ollector." Reilly did not appear. On September 26, he was notified by certified mail letter from the MBTA's general manager that he was "discharged from the employ of the" MBTA "by reason of insubordination by . . . failing to report as instructed for a physical examination . . . and for not communicating any excuse for the failure to the" MBTA.

A grievance about Reilly's discharge came before the MBTA's general manager on November 7 and was denied on November 14, 1972, by a letter upholding the earlier decision discharging Reilly. On December 26, 1972, Reilly was notified that the board of directors on December 21 had voted to sustain the action of the general manager.

(objected to by Reilly) of the Union's business agent (see note 4, *supra*) was filed.[6]

### A. *The Reilly-Union Stipulation*

Following the conciliation report (see n.6), Reilly and the Union came to an agreement, a part of which was filed in the form of a "stipulation and agreement for judgment" on August 1, 1979. To this the MBTA was not a party. In this document Reilly and the Union stipulated "that the grievances of . . . Reilly were not processed [*sic*] to arbitration for reasons other than the merits of his cases"; that the Union "does not contest the allegations of [c]ounts I and II of" Reilly's second amended complaint;[7] and that Reilly by a letter of February 22, 1973, had made an "effective" demand for arbitration of his discharge.

### B. *The Partial Judgment of August, 1979.*

On August 3, 1979, a Superior Court judge (Judge No. 2), on the basis of this stipulation, "expressly determined that there is no reason to delay entry of . . [j]udgment" between Reilly and the Union, and ordered that the Union (see Mass.R.Civ.P. 54[b], 365 Mass. 821 [1974]), "proceed to arbitrate with" the MBTA "if a judgment of this court directs . . . [the MBTA] to arbitrate, or said [a]uthority agrees to so arbitrate." No transcript of the hearing (or of evidence taken, if any) in con-

---

[6] Thereafter there was little action in the case until February, 1979, when a highly qualified conciliator was appointed. His efforts, after several general discussions, were unsuccessful. The conciliator's report, dated March 22, 1979, was in general terms but represented that, although the three parties (the Union, Reilly, and the MBTA at their last conference) had "indicated a substantial likelihood of being able to work out a settlement," one of them (apparently the MBTA) had withdrawn from settlement negotiations.

[7] Substantial portions of these counts theretofore had been denied by the Union. The counts included an allegation that in November, 1971, Reilly had been a candidate for election to the office of vice-president of the Union and opposed the election of other candidates with the consequence that "open and direct hostility developed between" Reilly and other Union members who subsequently were elected to Union office. It was also alleged that the Union's "failure . . . to take . . . [Reilly's] grievance to arbitration was not based on the merits of his claim but was as a result of his refusal to apologize for his conduct during the [1971 Union] election," and that the Union's "decision was arbitrary and in bad faith."

nection with the order òf August 3, 1979, is in the record.[8] Notice of Judge No. 2's action was sent by the clerk to the parties, including the MBTA, on August 8, 1979. The docket shows no action by the MBTA to claim an appeal from the order or to have it vacated in the Superior Court, until the MBTA's appeal from the judgment of February 1, 1985, by Judge No. 7. See n.14, below.

C. *The 1980 Order to Arbitrate.*

On March 10, 1980, the MBTA filed a motion to dismiss Reilly's complaint. Reilly moved to strike that motion. Trial of the case began the next day before a Superior Court judge (Judge No. 3). Judge No. 3 (after hearing direct examination of Reilly but not any cross-examination) ordered on March 12, 1980, that Reilly's grievances be submitted to arbitration under the collective bargaining agreement and that Reilly's equity proceeding be stayed pending the arbitration award. This action was taken after Judge No. 3 had pointed out to the MBTA's counsel that he was "leaving all . . . [the MBTA's] avenues open . . . as far as staying this action and . . . [dealing with the MBTA's] motions."[9]

---

[8] On June 22, 1979, simultaneously with executing the stipulation filed with the clerk's office on August 1, Reilly executed a release and indemnity agreement (running to the members of the Union and to its past and present officers) of all claims and demands which could be asserted against the Union in the equity proceeding. He also executed an agreement to indemnify the Union against all claims, damages, and recoveries by the MBTA against the Union on account of the transactions dealt with in the equity proceeding, including any contribution which the Union might be required to make to satisfy any recovery against the MBTA. The MBTA now claims that it did not learn of this indemnity agreement until March 7, 1984, when the Union filed its third-party complaint in the second proceeding, brought by the MBTA, discussed below. The Union and Reilly contend that the MBTA had learned of the release and indemnity agreement at least by April, 1981.

[9] The MBTA made some general objection at the hearing before Judge No. 3 to the acceptance of Reilly's stipulation with the Union as sufficient proof of the Union's failure to represent Reilly in good faith. So far as there was any discussion of this point, the MBTA's objection was not made explicit nor was it persistently pursued. Nothing in this record suggests that either Reilly or the Union disclosed to Judge No. 2 or Judge No. 3 before these judges took action, respectively, the existence of the indemnity agreement executed on June 22, 1979, simultaneously with the Reilly-Union

The MBTA filed on April 10, 1980, notice of appeal. Judge No. 3 allowed Reilly's motion to strike as premature this appeal on April 28.[10]

### D. *The 1980-1981 Arbitration Proceedings.*

Reilly's grievances then were submitted to arbitration. The arbitrator made note that, before him, the MBTA contended that no sufficient proof had been offered of the Union's breach of its duty of fair representation. He stated, however, that "presumably that is a matter that the Superior Court ha[d] already considered," and that the Union had not contested Reilly's claim that the Union's failure to represent him was arbitrary and in bad faith. He construed the Superior Court's order as meaning that the parties were to proceed directly to arbitrate the merits of Reilly's grievances without allowing the MBTA to claim that the Union had not presented the grievances to the MBTA in timely fashion.[11] He then ruled that the grievances were arbitrable.

On the merits of Reilly's grievances the arbitrator ruled (a) that, for the train episode, Reilly had not been shown to have committed "any offenses worthy of discipline," and (b) that Reilly's discharge had been carried out by the MBTA in "wholesale disregard of" § 104(A) of the collective bargaining agreement and that the discharge must be set aside.

---

stipulation. Despite the circumstance that MBTA's counsel seemed somewhat equivocal in opposition to arbitration while actually in the presence of Judge No. 3, it was agreed (in confusing general terms) by the parties in the MBTA's 1981 action (see Part III, *infra*) that the MBTA "steadfastly refused [before Judge No. 3] to submit . . . Reilly's grievances to arbitration."

[10] On May 19, 1980, the MBTA filed a motion for final judgment for it. This motion was denied by Judge No. 3, who ruled that "[t]he issue of arbitrability under the terms of an agreement [to arbitrate] may be preserved and raised subsequently in a proceeding seeking to vacate the arbitrator's award. G. L. c. 150C, § 11(*a*)(3)," citing *School Comm. of Agawam* v. *Agawam Educ. Assn.*, 371 Mass. 845, 847-848 (1977).

[11] See *Norton* v. *Massachusetts Bay Transp. Authy.*, 369 Mass. 1, 2 (1975), which held that the MBTA was not required to arbitrate a matter at the request of an employee (but not of his union), unless bad faith or breach of the union's duty of fair representation has been shown.

The arbitrator ruled that it was beyond his authority (because that matter was not covered by a provision of the collective bargaining agreement subject to his interpretation) to make a determination on the question of apportionment of damages between the MBTA and the Union. He returned "this element of the case to the Superior Court for disposition."

The arbitrator's award was dated January 14, 1981. Copies of it were received by all parties on January 16, 1981. The docket in Reilly's equity case shows no motion by the MBTA to vacate the arbitrator's award within thirty days thereafter.

On February 23, 1981, Reilly filed a motion to confirm the arbitrator's award which was allowed[12] on March 20, 1981, by a Superior Court judge (Judge No. 4), who then ordered the arbitrator to assess the damages to Reilly "without respect to the question of apportionment."[13]

### E. *Post-Arbitration Proceedings.*

A motion by Reilly to confirm the arbitrator's award and for judgment, filed April 12, 1983, finally was allowed in late January, 1985, by a Superior Court judge (Judge No. 7), after

---

[12] The MBTA, on March 18, 1981, filed written objections to confirming the award, and gave notice of appeal from the order confirming the award on March 26, 1981. This appeal was stayed on April 13, 1981, by another Superior Court judge (Judge No. 5) until the determination of damages and until disposition had been made of a motion by the MBTA for leave to file a third-party complaint. The third-party complaint referred to in the stay order of April 13 was never prosecuted as such by the MBTA. A separate complaint (see part III of this opinion in the MBTA's 1981 action against the officers of the Union and Reilly) apparently was substituted for the third-party complaint. We, of course, may express no views on the correctness of the arbitrator's rulings on Reilly's grievances so far as properly submitted to him for decision, even if one or more of us might have reached different conclusions. On November 22, 1983, by a stipulation of the MBTA, Reilly, and the Union (approved by Judge No. 7), the MBTA's complaint was stayed until appellate determination of any appeals in Reilly's equity proceeding.

[13] After further hearings the arbitrator filed an additional report concerning damages and other matters. To this further arbitrator's report, received by the parties on October 1, 1982, Reilly on October 28, 1982, filed objections and a motion to vacate it. After objections to this motion by the MBTA, the motion to vacate was denied by a Superior Court judge (Judge No. 6) on December 20, 1982.

hearing. Judgment[14] was entered on February 1, 1985, that Reilly recover $189,278.67[15] with interest from December 20, 1982 (the date of the denial by Judge No. 6 of Reilly's motion to vacate the award).

### III. THE MBTA's 1981 ACTION.

The MBTA's complaint in its 1981 action against the Union's officers recited, in general, facts stated above with respect to Reilly's 1973 bill in equity up to the date of the 1981 complaint. That complaint also asserted that the Union had violated the collective bargaining agreement to the prejudice of the MBTA (a) by the Union's conduct on Reilly's grievances, and (b) by entering into the stipulation with Reilly which led to the partial judgment of August, 1979. The MBTA sought judgment that the Union was "liable to . . . [the MBTA] either in indemnity or the whole amount of any judgment for damages against" the MBTA or "for contribution" toward all or an apportioned share of any such damages. On March 7, 1984, the Union (with the assent of the MBTA) obtained leave of Judge No. 7 to serve on Reilly a third-party complaint by the Union which recited in terms the indemnity agreement of June 22, 1979 (see note 8, *supra*).

### A. *The "Agreed Statement of Facts."*

On March 7, 1984, the MBTA, Reilly, and the Union filed a document entitled "Agreed Statement of Facts," which set out much of the past history of Reilly's grievances and of this litigation. The statement, however, does not appear to have

---

[14] The MBTA claimed an appeal from this judgment of Judge No. 7 which purported to include appeals also from the orders of Judge No. 2 (of August 8, 1979), of Judge No. 3 (of March 12, 1980), of Judge No. 4 (March 24, 1981), and of Judge No. 5 (of April 13, 1981). Reilly appeals from the judgment because it failed to award interest from the commencement of the action. The Union claimed an appeal because the judgment did not contain a provision that Reilly had agreed to forgo receipt of any sums which might be established as due to him from the Union in the MBTA's 1981 action against the Union.

[15] From this amount the judgment directed that the MBTA pay $52,703.74 to the MBTA's retirement fund and $17,753.34 to the Internal Revenue Service for FICA taxes.

been more than an agreement concerning evidence[16] which the judge could consider, rather than a "case stated" of all pertinent facts from which the judge might draw inferences. See *Mollahan* v. *McGrath*, 357 Mass. 229, 232 (1970). Compare the statements considered in *Quintin Vespa Co.* v. *Construction Serv. Co.*, 343 Mass. 547, 548, 551-552 (1962), and *Saphier* v. *Devonshire St. Fund, Inc.*, 352 Mass. 683, 684 (1967).

B. *Motions for Summary Judgment and the Report.*

After the "agreed statement of facts" had been filed, each party in March, 1984, filed a motion for summary judgment against each other party. By memorandum and order, dated January 30, 1985, Judge No. 7 reported to this court the question whether he may "apportion damages between . . . the MBTA and the Union." This the judge did after referring to *Vaca* v. *Sipes*, 386 U.S. 171 (1967), and *Bowen* v. *United States Postal Serv.*, 459 U.S. 212 (1983).

IV. DISCUSSION.

A. *Reilly's Equity Case.*

The MBTA argues only a few issues in the equity proceeding.

1. The MBTA first contends that Judge No. 2 should not have entered partial judgment upon the issues between Reilly and the Union. For this position the MBTA makes only slight argument and refers us to no aspects of the record showing that the order caused harm to the MBTA.[17]

The record does not disclose whether counsel for the MBTA participated in the hearing before Judge No. 2. As already

---

[16] Certain facts were stipulated at the begining of the document, but it concluded with a provision that the "[s]tipulation and [e]xhibits may be offered as *evidence* . . . of any or all matters hereinbefore stipulated; provided, however, that no admission is made as to the competency, materiality, or relevancy of any . . . facts above stated" (emphasis supplied).

[17] The MBTA does point out that Judge No. 2 did not follow what is now regarded as "the desirable practice of stating the reasons for his certification that there . . . [was] no just reason for delay" in entering partial judgment under Mass.R.Civ.P. 54(b) as between Reilly and the Union. See *J.B.L. Constr. Co.* v. *Lincoln Homes Corp.*, 9 Mass. App. Ct. 250, 253 (1980), decided several months after Judge No. 2 acted. See also *New England Canteen Serv., Inc.* v. *Ashley*, 372 Mass. 671, 677-678 (1977). Compare *Bragdon* v. *Bradford O. Emerson, Inc.*, 19 Mass. App. Ct. 420, 422 (1985).

noted, no effort (until the final appeal, note 14, *supra*) to vacate the order then entered was made by the MBTA. Judge No. 2 has not been shown to have acted inappropriately in entering the order for partial judgment.

2. The MBTA next contends that the stipulation by Reilly and the Union was insufficient by itself to establish that a breach of the Union's duty of fair representation of Reilly had in fact occurred. The record does not show that the MBTA (if represented at all at the hearing before Judge No. 2 in August, 1979) made any effort to prove to be false the Union's stipulation as to its breach of duty. The Union's stipulation that there had been such a breach appears to be at most evidence, so that, in an action in which such a breach was relevant, the MBTA could have offered evidence that no such breach by the Union had taken place. See *Clayton* v. *International Union, UAW,* 451 U.S. 679, 693 n. 23 (1981). The MBTA also has not established that it persisted in producing such proof before Judge No. 3 (see note 9, *supra*). Although the arbitrator (see part II(D) of this opinion, *supra*) made note of the MBTA's contention that there had been inadequate proof of the Union's breach, he merely stated, " [P]resumably that is a matter that the Superior Court has already considered." On the present record, this probably was an erroneous assumption by the arbitrator. It was, however, an error which could and should have been raised by the MBTA in connection with a motion to vacate the award under G. L. c. 150C, § 11(*b*). See *Local 589, Amalgamated Transit Union* v. *Massachusetts Bay Transp. Authy.*, 397 Mass. 426, 429-431 (1986). Because the MBTA filed no such motion seasonably, the arbitrator's error cannot be raised now as an objection to the award.[18]

---

[18] Decision of issues concerning the arbitrator's error may have bearing upon a matter specifically not decided by the arbitrator (but returned by him to the Superior Court for determination), viz., whether any damages recoverable by Reilly from the MBTA may be apportioned to be paid (at least in part) by the Union by reason of considerations discussed in the *Bowen* case, 459 U.S. at 218-230, especially 226-227 n.15. See part IV(B), *infra*.

3. The MBTA argues that the stipulation of June 22, 1979, between Reilly and the Union for the entry of partial judgment was given in consideration of a "secret [r]elease and indemnity agreement" not disclosed either to Judge No. 2 or to Judge No. 3. The record shows no such disclosure. For the very reasons pointed out by Mr. Justice Powell in the *Bowen* case, 459 U.S. at 226-227 n.15 (see Mr. Justice White's dissent at 241-242 n.12), this settlement is highly suspect as an agreement of "settlement pursuant to which the union . . . acknowledge[s] a breach of its duty of fair representation in exchange for the employee's [here Reilly's] undertaking to look to his employer for his entire recovery." We cannot, of course, determine on this record whether Judge No. 2 would have entered partial judgment for Reilly, or whether Judge No. 3 would have ordered the case to arbitration, if they, respectively, had known of this allegedly "secret" agreement. Certainly each judge probably would have considered his action with special care, had he known that the Union unexpectedly had changed its longstanding position about arbitration of Reilly's grievances while contemporaneously entering into an arrangement which would release the Union from all liability to its complaining member, Reilly, and (anticipating its potential for liability even before the *Bowen* decision on January 11, 1983) would indemnify the Union against any liability of the Union to contribute to satisfaction of a judgment for Reilly against the MBTA.

The MBTA apparently regards its appeals in Reilly's suit and its separate action against the Union and its officers as, in some respects, the equivalent of an action for relief from at least (a) the partial judgment ordered by Judge No. 2 in August, 1979, (b) the order of Judge No. 3 sending Reilly's grievances to arbitration; and perhaps also (c) the final judgment in Reilly's equity suit ordered by Judge No. 7 on February 1, 1985. Although the MBTA's arguments are general and diffuse, it seems to contend that the failure to disclose the Reilly-Union release and indemnity agreement was a "fraud on the court" to be dealt with under Mass.R.Civ.P. 60(b), 365 Mass. 828 (1974).

Reilly and the Union certainly should and could have shown more candor and would have been wise (in view of the suspicion which necessarily would be raised) if they had disclosed to Judge No. 2 and Judge No. 3 the whole transaction as a part of which the Union purported to admit that it had violated its duty of fair representation of Reilly. See Friendly, C.J., in *Kupferman* v. *Consolidated Research & Mfg. Corp.*, 459 F.2d 1072, 1080-1081 (2d Cir. 1972). A more difficult question is whether their failure to do so amounted to "fraud on the court." The MBTA itself has stipulated (somewhat ambiguously) that the Reilly-Union release and indemnity agreement came about as "a result of the urging of the [c]onciliator." See note 6, *supra*.

In the absence of a transcript of the hearing before Judge No. 2, we cannot know whether there then was any special colloquy making it unconscionable for Reilly's and the Union's counsel to omit disclosure of the release and indemnity agreement. No such occasion has been pointed out to us in the hearing before Judge No. 3 when arbitration was ordered. The power to set aside judgments for "fraud on the court" has been cautiously exercised. See 11 Wright & Miller, Federal Practice and Procedure § 2870, at 254-257 (1973 & Supp. 1986); 7 Moore's Federal Practice par. 60.33, especially at 60-351 through 60-362 (2d ed. 1986); Smith & Zobel, Rules Practice § 60.9, at 477-481 (1977 & Supp. 1986). See also *Pina* v. *McGill Dev. Corp.*, 388 Mass. 159, 165-168 (1983); Restatement (Second) of Judgments § 70(1) comment c, and reporter's note at 185 (1982); *Kerwit Medical Prod. Inc.* v. *N. & H. Instruments, Inc.,* 616 F.2d 833, 836-837 (5th Cir. 1980); *M.W. Zack Metal Co.* v. *International Nav. Corp.*, 675 F.2d 525, 529-530 (2d Cir.), cert. denied, 459 U.S. 1037 (1982). *USM Corp.* v. *SPS Technologies, Inc.*, 694 F.2d 505, 508-510 (7th Cir. 1982). Other relevant authorities include *W.M. Gullicksen Mfg. Co.* v. *MacNeil*, 347 Mass. 568, 574-576 (1964); *Olsson* v. *Waite*, 373 Mass. 517, 531-533 (1977); *Artco, Inc.* v. *DiFruscia*, 5 Mass. App. Ct. 513, 517 (1977); or *Aronson* v. *Brookline Rent Control Bd.*, 19 Mass. App. Ct. 700, 703 (1985). The ambiguities and uncertainties already noted lead

us to refrain from holding that there was here "fraud upon the court."

4. The MBTA contends that it is entitled to a hearing on the issue whether the Union violated its duty of fair representation of Reilly. Judge No. 3 decided during the trial before him that Reilly's grievances should go to arbitration. The MBTA was afforded no opportunity to cross-examine Reilly or to offer proof that the Union had refused properly to press Reilly's grievances. See note 9, *supra*. That proof might have affected the order to arbitrate. The MBTA, however, even after being told by Judge No. 3 that the question of arbitrability could be raised by a motion to vacate the arbitrator's award (see note 10, *supra*), completely failed to file seasonably any such motion. The MBTA's opportunity thus was lost to prove in Reilly's equity case that the Union had committed no breach of its duty to represent Reilly. See the *Local 589* case, 397 Mass. at 429-431, although that loss may be considered for other purposes. See note 18, *supra*.

The MBTA in its brief states that that it does not challenge the arbitrator's award "on the merits of the award itself" but only on whether the arbitrator had jursidiction to render any award. Even if the arbitrator was in error (a) in thinking that the Superior Court had already considered the question whether the Union had fairly represented Reilly, and (b) in not permitting the MBTA to submit proof that the Union had acted fairly, the MBTA did not use the proper remedy for correcting those errors, viz., a motion to vacate the award.

B. *The MBTA's 1981 Action Against the Union and Reilly.*

The question reported by Judge No. 7 in the MBTA's 1981 case essentially raised the question whether, in a case subject to G. L. c. 150C, apportionment of the damages determined in an arbitrator's award (under a collective bargaining agreement) as due from an employer may be imposed upon a union under the principles discussed in the *Bowen* case, 459 U.S. 212 (1983). We answer the question in general in the affirmative.

The possibility of apportionment of arbitration awards in employment cases was discussed in *Vaca* v. *Sipes*, 386 U.S. 171 (1967). There (at 196) it was indicated (in a case where an

employee had been allowed recovery from his union for its failure to press to arbitration a grievance for allegedly wrongful discharge) that some allocation of damages might be appropriate. The opinion (at 196-197) went on to say, "A' more difficult question is, what portion of the employee's damages may be charged to the union: in particular, may an award against a union include . . . damages attributable solely to the employer's breach of contract? We think not. Though the union has violated a statutory duty in failing to press the grievance, it is the employer's unrelated breach of contract which triggered the controversy and which caused this portion of the employee's damages. The employee should have no difficulty recovering these damages from the employer, who cannot . . . hide behind the union's wrongful failure to act; in fact, the employer may be (and probably should be) joined as a defendant in the fair representation suit. . . . The governing principle . . . is to apportion liability between the employer and the union according to the damage caused by the fault of each. Thus, damages attributable solely to the employer's breach of contract should not be charged to the union, but increases if any in those damages caused by the union's refusal to . . . [put forward] the grievance should not be charged to the employer."

In *Hines* v. *Anchor Motor Freight*, 424 U.S. 554, 572-573 (1976),[19] a concurring opinion by Mr. Justice Stewart raised substantial doubt about some language just quoted from *Vaca* v. *Sipes*. He said (at 573), "If an employer relies in good faith on a favorable arbitral decision, then his failure to reinstate discharged employees cannot be anything but rightful, until

---

[19] Cases between *Vaca* v. *Sipes*, decided in 1967, and the *Bowen* case, decided in 1983, include *Czosek* v. *O'Mara*, 397 U.S. 25 (1970), limited somewhat by the *Bowen* case, 459 U.S. at 229-230, but see 236 n.5; and cases applying a view of the *Sipes* case (a good deal more restricted than the later holding in the *Bowen* case), such as *DeArroyo* v. *Sindicato de Trabajores Packinghouse*, 425 F.2d 281, 291-292 (1st Cir.), cert. denied, 400 U.S. 877 (1970); *Soto Segarra* v. *Sea-Land Serv. Inc.*, 581 F.2d 291, 294-298 (1st Cir. 1978), and *Seymour* v. *Olin*, 666 F.2d 202, 212-215 (5th Cir. 1982). See also *Self* v. *Local Union No. 61*, 620 F.2d 439, 443-444 (4th Cir. 1980). Compare *Pitts* v. *Frito-Lay, Inc.*, 700 F.2d 330, 334-335 (6th Cir. 1983), and the cases cited in note 21, *infra*.

there is a contrary determination. Liability for the intervening wage loss must fall not on the employer but on the union. Such an apportionment of damages is mandated by *Vaca's* holding that 'damages attributable solely to the employer's breach of contract should not be charged to the union, but increases if any in those damages caused by the union's refusal to . . . [press] the grievance should not be charged to the employer.' 386 U.S. at 197-198. To hold an employer liable for back wages *for the period during which he rightfully refuses to rehire discharged employees* would be to charge him with a contractual violation on the basis of conduct precisely in accord with the dictates of the collective agreement" (emphasis supplied).

In the *Bowen* case, 459 U.S. at 225-228, Mr. Justice Powell (speaking for the majority of the court) gave weight to "federal labor policy" underlying "the grievance procedure," and pointed out (a) that the "union plays a pivotal role in the [grievance] process since it assumes the responsibility of determining whether to press an employee's claims," and (b) that "the employer . . . must [be able to] rely on the union's decision not to pursue an employee's grievance." [20] We read the *Bowen* case as adopting a broad rule that damages in "fair representation" cases like that now before us should be apportioned

---

[20] The majority opinion (at 226) proceeds: "There is no unfairness to the union in this approach. . . . When the union . . . waives arbitration or fails to seek review of an adverse decision, the employer should be in substantially the same position as if the employee . . . [possessed] the right to act on his own behalf and had done so. Indeed, if the employer could not rely on the union's decision, the grievance procedure would not provide the 'uniform and exclusive method for [the] orderly settlement of employee grievances' . . . essential to the national labor policy." Further (at 227) the opinion reads, "The principle announced in [the] *Vaca* [case] reflects this allocation of responsibilities in the grievance procedure — a procedure that contemplates that both employer and union will perform their respective obligations. *In the absence of damages apportionment* where the default of both parties contributes to the employee's injury, incentives to comply with the grievance procedure will be diminished. Indeed, imposing total liability solely on the employer could well affect the willingness of employers to agree to arbitration clauses as they are customarily written." (Emphasis supplied.)

equitably between the employer and the union according to the injury to the employee caused by each party.[21]

The Massachusetts courts have recognized that similar considerations and principles apply in labor cases arising under the closely comparable Federal statutes and Massachusetts statutes (such as G. L. c. 150C) regulating collective bargaining, labor disputes, and labor policy. Federal precedents have been used where reasonably applicable to situations arising under Massachusetts regulatory statutes. See, e.g., *Norton* v. *Massachusetts Bay Transp. Authy.*, 369 Mass. 1, 2 (1975), see note 11, *supra; Balsavich* v. *Local Union 170, Intl. Bhd. of Teamsters*, 371 Mass. 283, 286-287 (1976); *Berman* v. *Drake Motor Lines, Inc.*, 6 Mass. App. Ct. 438, 445-446 (1978); *Trinque* v. *Mount Wachusett Community College Faculty Assn.*, 14 Mass. App. Ct. 191, 197-199 (1982), all decided before the *Bowen* case was announced in January, 1983. We see nothing in any of these decisions, or in the general policy underlying G. L. c. 150C, which precludes applying the *Bowen* case to the largely comparable facts of the present case.

The issue of apportionment here has been left open by the arbitrator and has not been disposed of otherwise. Under the *Norton* decision, 369 Mass. at 2, the MBTA could not have dealt with Reilly directy until Reilly had shown that the Union

---

[21] Our interpretation of the *Bowen* case seems to be consistent with that of decisions citing the *Bowen* case. See *Del Costello* v. *International Bhd. of Teamsters*, 462 U.S. 151, 163-167 (1983), which, however, was not directed specifically to the apportionment problem. See also, e.g., *Pitts* v. *Frito-Lay, Inc.*, 700 F.2d 330, 335 n.5 (6th Cir. 1983); *Kaschak* v. *Consolidated Rail Corp.*, 707 F.2d 902, 911-912 (6th Cir. 1983); *McNaughton* v. *Dillingham Corp.*, 707 F.2d 1042, 1047 n.3 (9th Cir. 1983); *Bowman* v. *TVA*, 744 F.2d 1207, 1215 (6th Cir. 1984); *Carpenter* v. *West Virginia Flat Glass, Inc.*, 763 F.2d 622, 625 (4th Cir. 1985); *Lewis* v. *American Postal Wkrs. Union*, 561 F. Supp. 1141, 1144-1148 (D. W.Va. 1983); *Samuels* v. *American Transit Corp.*, 595 F. Supp. 840, 842-843 (M.D. N.C. 1984). See as to the views of commentors, e.g., Allred, The *Bowen* Decision 34 Lab. L.J. 408 (1983); Weingarten, *Bowen* v. *United States Postal Service* 35 Lab. L.J. 608 (1984); Deitsch, *Bowen* v. *United States Postal Services* 39 Arb. J. 57 (1984); Paul, The New Apportionment Standard 9 Del. J. Corp. L. 125 (1984). Compare Murray, Apportionment of Damages in Section 301 Duty of Fair Representation Actions 32 DePaul L. Rev. 743 (1983).

had not represented him fairly. The MBTA, until that circumstance was shown, was not bound to correct a grievance which the Union refused to press. Even apart from the Union's admission of error (an admission which does not bind the MBTA), there is evidence in the record which would warrant the conclusion that the Union was responsible, at least in part, for the MBTA's failure to meet Reilly's grievances so far as just.

The "agreed statement of facts" is not an adequate basis for an appellate court, itself, to make an apportionment between the Union and the MBTA of the duty of paying the award to Reilly. It must be determined in the Superior Court after hearings to appraise the extent to which the award was caused by the Union's failure to press promptly and reasonably a fair adjustment of Reilly's grievances. The determination may be affected by findings of fact on issues such as (a) whether, or to what extent, the stipulation of July 22, 1979, may have been collusive; (b) whether the Union's original determination not to press Reilly's grievances was justified, e.g., what the Union knew about Reilly's employment record with the MBTA as bearing on the wisdom of pushing Reilly's grievances (see note 4, *supra*); and (c) the extent to which the Union's long delay in changing its position impaired the MBTA's ability (e.g., through loss of witnesses) to prove that its discipline of Reilly was justified. If a reasonable apportionment cannot be agreed by the parties, further evidence must be taken or a more adequate statement of agreed facts (amounting to a "case stated") on the issue of apportionment should be stipulated.[22]

## C. *Miscellaneous Contentions.*

1. Reilly contends that he is entitled to interest from the date of the breach established by the arbitrator. The issue of interest was submitted to the arbitrator by Judge No. 4, by his order entered March 20, 1981, directing that the "[a]rbitrator

---

[22] The *Bowen* case, 459 U.S. at 220-230, leaves considerable flexibility as to methods of making an apportionment beween an employer and a union of the expense caused by each in an unfair representation case. Prior to a determination of the applicable facts, the method of apportionment in the present case must be left to the trier of the facts to determine a fair allocation.

. . . assess the . . . damages due . . . Reilly." The arbitrator dealt with that issue and found it "not appropriate . . . to award interest." He also denied any award of attorney's fees. Each of these items was "a component of . . . [the] award" to be determined by the arbitrator, and his determination (in many respects at least) was not subject to usual principles of law binding upon courts. See *Blue Hills Reg. School Dist.* v. *Flight*, 10 Mass. App. Ct. 459, 471-472 (1980). Reilly is entitled to no other prejudgment interest or attorney's fees than what the arbitrator included in his award.[23]

2. Judge No. 7 directed correctly that post-award interest commence on December 20, 1982, the date that Reilly's motion to vacate the arbitrator's second award (on damages) was denied. See note 13, *supra*. That was the earliest date on which the award became definitive and enforceable. The first application by Reilly to enforce the definitive second award by motion was not made until April 12, 1983.

Two decisions of the Supreme Judicial Court indicate strongly that post-judgment interest on an arbitrator's award should commence on the date that the award becomes final. In *Marlborough Firefighters, Local 1714* v. *Marlborough*, 375 Mass. 593, 600 n.7 (1978), there was strong indication that such a rule was viewed with favor, but then it was not necessary to decide the issue. In *Watertown Firefighters, Local 1347* v. *Watertown*, 376 Mass. 706, 717-719 (1978), the rule was applied (see 707) to "that form of 'interest' arbitration called 'last and best offer,'" but the language of the opinion and footnotes 19 through 26 indicate that a more general rule (that interest runs from the date when the award becomes fixed) was being prescribed.[24]

---

[23] Reilly gains no assistance with respect to counsel fees from Federal statutes and decisions. Counsel fees usually are awarded in Massachusetts only "upon specific affirmative authority," see *Griefen* v. *Treasurer & Recr. Gen.*, 390 Mass. 674, 676 (1983), and cannot be taxed at law as costs, except upon "specific statutory direction." See *Rival's Case*, 383 Mass. 172, 175 (1981). See, as to the State law applicable to MBTA employees, *Local Div. 589* v. *Amalgamated Transit Union*, 295 F. Supp. 630, 632 (D. Mass. 1969).

[24] The statement in footnote 26, at 719, of the *Watertown* case shows an intent to abandon the rule set out in *Arlington* v. *Local 1297, I.A.F.F.*, 6

3. Reilly suggests that the MBTA seeks to recover from him on a theory of indemnity which, he suggests, may be recovered only after the indemnitor has made payment. Any recovery from the Union, based on the *Bowen* case, 459 U.S. at 218-230, is one of apportionment of any liability (as between the MBTA and the Union) in accordance with the extent to which each of these parties has caused the liability. The only issue of indemnity in these cases arises as between the Union and Reilly. So far as the Union may be held liable to Reilly after remand, the Union is entitled (see note 8, *supra*) by the terms of the Reilly-Union release and indemnity agreement to be indemnified by Reilly.

All the issues among the parties presented by these two cases should be settled upon remand. Accordingly, although the judgment entered on February 1, 1985, should be taken as establishing the aggregate award to Reilly to be met by the MBTA and the Union (after a proper apportionment), the judgment (a) does not make an allocation of the amounts to be paid by each of them, and (b) does not provide for Reilly's indemnification of the Union for any amount it has to pay.

It may assist the efficient and prompt disposition of the cases if they are consolidated once more.[25] This will permit dealing in a single proceeding with the claims of the Union against Reilly for any indemnification from him to which the Union may be entitled after further hearings. See Mass.R.Civ.P. 42, 365 Mass. 805 (1974), a rule described in *Roddy & McNulty Ins. Agency, Inc.* v. *A. A. Proctor & Co.*, 16 Mass. App. Ct. 525, 528 (1983), as "devoted to the convenience of adjudication, the avoidance of prejudice[,] and the interests of

───────────

Mass. App. Ct. 874, 875 (1978), which rested (in respect of interest) on earlier cases such as *Glenn Acres, Inc.* v. *Cliffwood Corp.*, 353 Mass. 150, 156 (1967). See and compare *Trustees of B. & M. Corp.* v. *Massachusetts Bay Transp. Authy.*, 367 Mass. 57 (1975).

[25] A motion of the MBTA on April 15, 1983, to consolidate Reilly's 1973 equity suit with the MBTA's 1981 action was allowed by Judge No. 7 on June 2, 1983. The order was vacated on November 22, 1983, pursuant to an undated stipulation of the parties in both proceedings, again by Judge No. 7. The question put to this court in the MBTA's 1981 action was framed on January 30, 1985.

expedition and economy." See also Smith & Zobel, Rules Practice § 42.4 (1977). We remand Reilly's 1973 case for further consideration and possible reconsolidation with the MBTA's 1981 case to permit final adjustment of the Union's claim to indemnification from Reilly, if in the MBTA's 1981 case the Union is found to be liable for any portion of the arbitrator's award.

4. Reilly contends that the MBTA's 1981 action is an improper attempt to divide a single cause of action. He relies on *Cousineau* v. *Laramee*, 388 Mass. 859, 864 (1983), which, in turn, relies on *Dearden* v. *Hey*, 304 Mass. 659 (1939). In each of these cases, final judgment had entered in an earlier action to recover for the same tort sued on in the second action. It was held in each instance that there could not be recovery in the second action. Here appellate review of Reilly's 1973 equity case is still pending, and a question has been put to us by Judge No. 7 in the MBTA's 1981 action which is first answered by this opinion.

The MBTA, at all times since it had any possible reason to know of the Reilly-Union agreement of June 22, 1979, has pressed its claim for contribution. That claim was not passed on by the arbitrator. It was the subject of a motion to file a third-party complaint when Judge No. 5 stayed the appeal (April 13, 1981; see note 12, *supra*) from the confirmation of the award by Judge No. 4. The MBTA's 1981 action was promptly substituted for the proposed third-party complaint. See note 12, *supra*. No judgment has become conclusive, even in the 1973 equity proceeding, and the issues raised by the MBTA's 1981 action have never been litigated fully before any court or the arbitrator and are not subject to any principle of issue preclusion. See Restatement (Second) of Judgments § 27; see also § 28 (1982).[26]

---

[26] These cases present a situation where the pleadings and motions in Reilly's 1973 case and in the MBTA's 1981 action should be viewed according to their "obvious character rather than [by their labels]." See *Ahern* v. *Warner*, 16 Mass. App. Ct. 223, 225 (1983). See also *Minaya* v. *Massachusetts Credit Union Share Ins. Corp.*, 392 Mass. 904, 908 n.3 (1984).

## V. CONCLUSIONS.

A. Reilly's 1973 equity case is remanded for further consideration by the Superior Court, with leave to the trial judge, preferably Judge No. 7 (if that can be arranged) in view of the numerous Superior Court judges who have dealt with fragments of this long-standing litigation, to vacate the judgment for the purposes of including in any new judgment provisions for the indemnification of the Union by Reilly as provided in the Reilly-Union agreement of June 22, 1979, and of consolidating the case with the MBTA's 1981 action, if that appears to the trial judge to be appropriate as a matter of judicial administration.[27]

B. The question put to us in the MBTA's 1981 action is answered generally in the affirmative, as more fully set out in part IV(B) of this opinion. Our answer permits the trial judge to develop with flexibility a suitable application of the *Bowen* case principles to the present facts as found by him. If, after further hearings in the Superior Court, it is determined that no part of the arbitrator's award is to be apportioned to be paid by the Union, the judgment in Reilly's 1973 equity case shall be affirmed.

C. No party shall have costs of these appeals.

*So ordered.*

---

[27] This court has been furnished by counsel for the MBTA (by letter to the clerk) with a copy of an arbitration award, dated January 29, 1986, by which the MBTA was directed to discharge Reilly for nonpayment of dues to the Union. Counsel for the MBTA represented that the amount due to Reilly in his 1973 suit may be affected. If any party shows this to be the case, the trial judge on remand may permit any appropriate modification of the judgment entered on February 1, 1985.