COUGHLAN CONSTRUCTION COMPANY, INC. *vs.* TOWN OF ROCKPORT (and a companion case[1]). March 19, 1987. *Arbitration,* Confirmation of award, Vacating award, Conduct of proceedings, Damages. *Contract,* Arbitration, Construction contract, Rescission.

In these actions consolidated in the Superior Court judgments were entered confirming an arbitration award dated August 17, 1982, in favor of Coughlan Construction Company, Inc. (Coughlan). Rockport appealed and Coughlan has filed a cross appeal. We affirm.

Coughlan and Rockport made a contract on April 10, 1978, for sewer construction. This contract contained provisions for arbitration of disputes. A dispute arose while work was in progress and Coughlan (on July 30, 1979) filed a demand for arbitration with the American Arbitration Association (AAA). See the AAA Construction Industry Arbitration Rules § 13 (1979).

In August, 1979, AAA sent identical lists of possible arbitrators to Coughlan and Rockport, each of which was to strike the names of those to whom that party objected. One or both of the parties objected to all but one of the names on the list submitted. AAA thereupon on a date (illegible in this record) prior to the end of November, 1979, appointed three arbitrators no one of whom had been on the lists earlier submitted to the

---

[1] The companion case is between the same parties.

parties.[2] Rockport offered no proof before the Superior Court that it (Rockport) had made objection to AAA's appointment of the arbitrators prior to its filing on January 9, 1981, a complaint[3] in the Superior Court for Essex County requesting, among other relief, a stay of arbitration. That complaint alleged (a) that Coughlan had failed to comply with the proper procedures for selecting arbitrators, and (b) that Coughlan and Rockport had abandoned the contract, thus making the arbitration provisions of the contract inapplicable. After Coughlan filed its answer, a Superior Court judge, on April 14, 1981, ordered the parties to proceed to arbitration of the claims made by Coughlan in July, 1979, some months before Coughlan had stopped work under the contract in December, 1979.

The arbitration started on September 28, 1981. Hearings were held from time to time until March 30, 1982. The arbitrators unanimously, on August 17, 1982, made an award to Coughlan of $271,811.

Rockport on September 20, 1982, filed a complaint in the Superior Court, Suffolk County, seeking to vacate the arbitrators' award. Coughlan in a separate proceeding sought confirmation of the award. The actions were consolidated. A District Court judge, sitting by designation in the Superior Court, heard the consolidated cases on January 17, 1984, and filed findings and rulings on December 31, 1984. The present appeals are from the judgments entered pursuant to the judge's findings and rulings in the consolidated actions.

1. Coughlan contends that the order of April 14, 1981, on the Essex County complaint compelling arbitration controlled determination of the validity of the arbitration provisions of the contract on principles of res judicata. The Essex County order, however, was not appealable. See G. L. c. 251, § 18; *School Comm. of Agawam* v. *Agawam Educ. Assn.,* 371 Mass. 845, 846-847 (1977, arising under the substantially identical language of G. L. c. 150C, § 16). The issue is still open on appeal in the present proceeding now that confirmation of the award has taken place.

The contract contained a provision, par. 30.1,[4] which under 40 C.F.R. § 35.938-8 (1978) and because this was a project funded in part by the

---

[2] The appointments of arbitrators were made at some time before December 4, 1979, at a time when Raymond C. Wilson appears to have been AAA's tribunal administrator for this arbitration. David F. Noonan, who later became the tribunal administrator, first worked for AAA on August 11, 1980, taking the place of Wilson.

[3] One of the matters recited in the complaint was that Coughlan on December 6, 1979, had notified Rockport that, because its workers' compensation insurance had been cancelled, it would have to stop work under the sewer contract on December 22, 1979, and that it was notifying the surety company on its bond of its cessation of work.

[4] The paragraph reads: "ARBITRATION 30.1 All claims, disputes and other matters in question arising out of or relating to the CONTRACT DOCUMENTS or the breach thereof, except . . . [not applicable] shall be decided by arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association. This agreement to arbitrate shall be specifically enforceable under the prevailing arbitration law. The award rendered by the arbitrators shall be final and judgment may be entered upon it in any court having jurisdiction thereof."

Federal government appears to control other arbitration provisions of the contract. The arbitrators were selected under this provision in accordance with AAA's Construction Industry Arbitration Rules § 13 (1979). Rockport participated in this procedure without objection and must be taken to have accepted it by failing to object promptly.

2. Rockport also contends that the contract, including its arbitration provisions, was abandoned by the parties when Coughlan informed Rockport on December 6, 1979, that it could not complete the contract because of inability to obtain vital insurance. There is no indication that Coughlan was agreeing to a rescission of the contract because it was compelled by events to stop work. Coughlan had demanded in July, 1979, arbitration of disputes involving extra work, contract interpretation, and other matters. It persisted in doing so. See *Riess* v. *Murchison,* 384 F.2d 727, 733-735 (9th Cir. 1967). Coughlan in July had not stopped work because of the dispute but had proceeded with performance. In similar circumstances, no rescission of a broad arbitration provision has been found. *County of Middlesex* v. *Gevyn Constr. Corp.,* 450 F.2d 53, 55-56 (1st Cir. 1971). See also *A. Sangivanni & Sons* v. *Floryan & Co.,* 158 Conn. 467, 473 (1969). See and compare *Mendez* v. *Trustees of Boston Univ.,* 362 Mass. 353, 356-357 (1972, where a teacher failed to appear at the beginning of an academic year for which she had been hired, and the court upheld as not plainly wrong a trial judge's holding of abandonment of the contract); *Computer Corp. of America* v. *Zarecor,* 16 Mass. App. Ct. 456, 460-461 (1983, a confused situation leading to uncertainty whether certain persons, who had never rendered services under a contract, had been intended to be parties to the contract which contained an arbitration provision). We hold that the arbitration provisions were in effect when Rockport was ordered to proceed to arbitration on April 14, 1981.

3. Rockport contends that the award must be vacated because of a possible bias (a) of one arbitrator and (b) of the successor AAA tribunal administrator of the arbitration. The trial judge heard the evidence concerning these contentions fully and concluded that neither the arbitrator nor the second tribunal administrator did anything to taint the arbitration process. The judge found that Rockport had "failed to meet its burden of proof with respect to either" person and had "not provided the specific and direct evidence of fraud, corruption, undue influence, or partiality . . . necessary to overturn an arbitration ruling."

As to the tribunal administrator, it was shown that he had not been employed by AAA until after the arbitrators had been selected, he did not attend the hearings, and made no attempt to influence the proceedings. His duties were purely administrative. Although the tribunal administrator later left the AAA and worked in the law office of Coughlan's counsel, allegations concerning his having taken papers concerning this arbitration with him to that office could be found not to have been substantiated.

With respect to the arbitrator, the trial judge found that he is an officer of a general contracting corporation, and is (or was) "a founder, treasurer, president, member of the board of directors, and life member of the Utility Contractors Association." This arbitrator had nominated the attorney for Coughlan as general counsel to the association. Coughlan's counsel had represented a company belonging to one of the arbitrator's brothers in an action against the town of Duxbury and, in about half his practice, has represented construction industry clients. He also has contributed material for the association's journal and has rendered legal advice to it. There was testimony that this arbitrator's knowledge that Coughlan's counsel had once acted as lawyer for the firm of the arbitrator's brother was acquired during a recess in the arbitration proceedings in the course of a general (and apparently casual) discussion among engineers and others in attendance. Other involvement of the arbitrator with counsel for Coughlan reasonably could have been found to have been casual and to have had no connection with this arbitration. The trial judge was well justified in treating the arbitrator's association with Coughlan's counsel as "a professional relationship in matters unrelated to the arbitration dispute," which this arbitrator "was not obligated to disclose." That the arbitrators' decision was unanimous tended to negate Rockport's contentions. *Weinrott* v. *Carp,* 32 N.Y.2d 190, 201 (1973).

The judge's conclusion has substantial support in the authorities. See *Bernstein* v. *Gramercy Mills, Inc.,* 16 Mass. App. Ct. 403, 412-413 (1983); *International Produce Inc.* v. *A/S Rosshavet,* 638 F.2d 548, 550-552 (2d Cir. 1981). In the *International Produce* case, Judge Lumbard appropriately recognized, at 552, that the most qualified business arbitrators were likely to be "prominent and experienced members of the specific business community in which the dispute to be arbitrated arose." To similar effect see *Cefalu* v. *Globe Newspaper Co.,* 8 Mass. App. Ct. 71, 78-79 (1979); *Wilson* v. *Dan McCabe's Creative Carpentry, Inc.,* 11 Mass. App. Ct. 956 (1981).

4. Coughlan in its complaint seeking confirmation of the arbitrators' award asked for the amount of the award "together with interests [*sic*] and costs." It also moved (in the case brought by Rockport to set aside the award) for costs, expenses, and interest under G. L. c. 231, § 6F.

Coughlan now relies on G. L. c. 231, § 6C, as entitling it to interest. The arbitrators' award made no award of interest and provided that fees and expenses should be borne equally by the parties. No finding as to the date of demand was made by the arbitrators. In these circumstances, we hold that Coughlan is not entitled to any prejudgment interest not awarded by the arbitrators. See *Blue Hills Reg. Dist. Sch. Comm.* v. *Flight,* 10 Mass. App. Ct. 459, 471-472 (1980).

In *Reilly* v. *Local 589, Amalgamated Transit Union,* 22 Mass. App. Ct. 558, 577 (1986), postjudgment interest was held to be computed commencing on "the date that the award . . . [became] final." This would mean (if the *Reilly* case is not distinguishable on its facts) on the day when judgment

was entered against Rockport on its complaint to vacate the award. In the *Reilly* case, however, this court mentioned (at 577) the intimations in *Marlborough Firefighters, Local 1714* v. *Marlborough,* 375 Mass. 593, 600 n.7 (1978), and in *Watertown Firefighters, Local 1347* v. *Watertown,* 376 Mass. 706, 717-719 (1978), that postjudgment interest might run appropriately from the date when the award became fixed. In the *Reilly* case the trial judge also had determined (in the somewhat special circumstances then before him) that postjudgment interest should run from the date when a motion to vacate the award had been denied.

Here, there has been no appeal to this court by Rockport on any issue relating to the *amount* of the award. The appeal only asserts the award's invalidity on other grounds. We perceive no reason why the intimations of the *Marlborough* and *Watertown* cases should not be given full effect. The arbitrators did not discuss the issue of interest or expressly disallow it. See the *Blue Hills Reg. Dist. Sch. Comm.* case, 10 Mass. App. Ct. at 472. Thus the question before us is simply what rule is applicable to a situation where the amount of postjudgment interest has not been affected at all by the award itself. Accordingly, postjudgment interest shall be computed beginning at the date of the award.

The judgments are affirmed with postjudgment interest to be computed from August 17, 1982, the date of the award.

*So ordered.*

*David Lee Turner* for the defendant.
*Edward J. Quinlan (Daniel J. Keating* with him) for the plaintiff.