GEORGE W. ANDERSON *vs.* JACOB D. ALBERTSTAMM.

Suffolk. January 17, 1900. — May 16, 1900.

Present: HOLMES, C. J., MORTON, LATHROP, BARKER, & HAMMOND, JJ.

*Expert Testimony — Hypothetical Questions — Exercise of Discretion by Presiding Justice.*

Where expert testimony is offered by way of answers to hypothetical questions, much must be left to the discretion of the presiding justice. The jury are instructed to disregard the answers unless they find the facts as assumed in the questions; but as it cannot be known in advance what may be the ultimate decision of the jury as to the facts in dispute, the usual practice is to allow counsel in framing a hypothetical question to assume the existence of such facts and conditions as the jury may have a right to find upon the evidence as it then is, or as there may be fair reason to suppose it may thereafter appear to be; and in determining whether a hypothetical question shall be allowed, the judge in many cases must rely to a great extent upon the good faith of counsel in their statements as to what they expect the evidence will be; and the evidence in this case as to the services rendered by the plaintiff as an attorney at law, compared with the facts assumed in the hypothetical questions to which exceptions were taken, shows no ground of exception.

In this case, which was an action to recover for professional services rendered the defendant in a suit in equity, it sufficiently appears that the question put to an expert witness assumed that he knew what was stated in the bill.

CONTRACT, to recover $300, alleged to be due the plaintiff, an attorney at law, for professional services. At the trial in the Superior Court, before *Hopkins,* J., the plaintiff testified that he had been engaged in general practice for more than nine years; that his office expenses were $150 per month; that on Saturday, October 15, 1898, the defendant, whom the plaintiff had not previously known, came to the plaintiff's office in company with a young lawyer named Samuel Fine, who had been a student in the law school when the plaintiff was an instructor in equity there; that Fine introduced the defendant, and together they told the plaintiff that the defendant owned the

Hotel Klondike in Boston; that it was worth $150,000, was assessed for $83,000, was subject to a first mortgage of $55,000, to a second mortgage of $16,000, neither of which was due; that the defendant had put $10,000 to $15,000 into the hotel; that the liquor license had been taken away before he purchased it; that foreclosure proceedings had been commenced by the second mortgagees on account of the default in the payment of the interest and taxes, and that the foreclosure sale was set for Monday, October 17, at twelve o'clock; that the defendant wanted time; that he had been negotiating with a man named O'Connor, with whom he had made an oral agreement to lease the hotel; that O'Connor had applied to have his license transferred, and had agreed to sign a lease on September 24, but had disappeared; that the defendant had obtained evidence that representatives of the second mortgagees had got O'Connor out of the way by representing to him that they were going to foreclose and would then let him the property on better terms; that Mr. Fine showed him a bill in equity all ready for filing, which the plaintiff produced, brought by Albertstamm, as plaintiff, against Hager and another, which the plaintiff examined; that the plaintiff told them that the strongest point they had in their claim was the alleged interference of Hager, the agent of the parties really in interest for coming between this proposed agreement of O'Connor and Albertstamm, and preventing him from letting the premises, etc.; and the plaintiff redrew the bill drawn by Fine, dictating the same to his stenographer, who wrote it out. He further testified that he then went to the court-house to arrange for a hearing upon an ex parte application for a temporary injunction; that after some difficulty he secured a temporary injunction; that he had a conference with Mr. Gaston over the telephone the day the injunction was issued, and another conference the following Monday; that on October 20 he had a conference with the attorney for the defence, and a hearing before the court upon a motion to dissolve the injunction; that he spent substantially the whole of that forenoon upon the case; that within the next few days the answers were filed; that he had conferences with the defendant and Fine on October 22, 25, and 26, and also conferred with Mr. Gaston and other attorneys and parties; that on October 27 the case came

up for a hearing, and the plaintiff moved for a continuance and got it; that the plaintiff went all over the case with experts and got their opinions as to the value of the property, etc., and spent substantially all of October 27 in court and with the witnesses preparing the case; that on October 28 the defendant was in the plaintiff's office twice; that on October 31 the case came up for trial at 2 P. M. and was on trial until 4 P. M.; that on November 1, at 2 P. M., the trial was resumed and was finished at 4 P. M.; that the next day the court ordered that the plaintiff, on or before November 16, pay the taxes and costs, thus giving Albertstamm two weeks further time in which to raise the money; that that ended the trial of the case for some days; that it was in court for part of two or else part of three days; that on November 3 the plaintiff had another conference with the defendant, other conferences November 5, 7, 8, 9, 12, and 16; that the plaintiff conferred with other people each of these days in regard to the same matter; and that he paid the entry fee and sheriffs' bill, and sent the defendant a bill of $300 for the whole amount.

Mr. Charles T. Gallagher, called as a witness for the plaintiff and qualified as an expert, testified as follows, subject to the defendant's exception:

" *Q.* Did you at my request examine the bill in equity of Albertstamm against Hager and others? *A.* Yes.

" *Q.* So you have a general idea of the facts as stated in that bill? *A.* Yes.

" *Q.* And the claim as stated in that bill. Now I will put a single question to you, Mr. Gallagher? What would you say was a fair price, a fair charge, by a member of the bar, for drafting and bringing a bill in equity setting forth those facts for the purpose of preserving an equity of redemption of $75,000 and securing time for the carrying out of negotiations for a lease involving an annual rental of a foreclosure of this apparent equity of $75,000, securing a month's time by litigation in the equity court for the purposes of carrying out those business transactions, involving some legal services on each of at least twenty days, including between five and six different days' hearing in the equity court, two or three whole days, and, say, some legal services for twenty-two days?"

The witness. " You mention nothing there of cash expenditures.

" *Q.* Supposing those were nine dollars? *A.* Not less than $300, and from that to $500, I should say. The class of action in the first place would be one that such as almost any lawyer at this bar would go to a man of twenty or thirty years' experience, like Mr. Robert M. Morse or Mr. Bartlett, or men of that standing, who would not let you out of their office for less than a $500 retainer. You go from that down to the inexperienced youth that could not do it anyway. Something from $300 to $500, you would get your figure."

The defendant objected on the ground that the question did not state the facts; but the court ruled the testimony admissible, and the defendant duly excepted.

Mr. Thomas W. Proctor, called as a witness for the plaintiff, and duly qualified as an expert, testified, subject to the defendant's objection and exception.

" *Q.* You have examined this bill referred to? *A.* Yes; the substance of it was stated by Brother Anderson to me. I have not had much of an opportunity to examine the bill myself.

" *Q.* But from what general knowledge you have of it and what is stated in it, what would you say a fair price was for an attorney's services in drafting that bill, involving the amount of property and the interest referred to in it, and getting from the equity court an injunction and securing a month's time for the client within which to carry out the deals about it, in the claim of that bill, involving two or three whole days' trial in the equity session and five or six partial days, and including some part of legal services in connection with the preparation of this case for parts of twenty days; what should you say a fair price and charge was for that service?"

To the admission of the foregoing testimony the defendant objected; the judge admitted the testimony, and the defendant duly excepted. " *A.* I should think $500."

" *Q.* And what would you say, Mr. Proctor, was a fair charge per day for the trial of a cause in the equity court involving in general the interests referred to in that bill? *A.* I should think for a man of Mr. Anderson's position at the bar and his

abilities, which are recognized by everybody, I think Mr. Anderson is entitled to $100 a day for a case of any importance.

" *Q.* You would include this?   *A.* Yes."

The defendant testified as a witness in his own behalf to certain facts and conversations which were claimed by his counsel as tending to show that he did not employ the plaintiff, but that the defendant employed Mr. Fine and Mr. Fine employed the plaintiff.

The defendant's attorney asked of the defendant:

" *Q.* Did you know when Mr. Anderson was acting in this case that he looked to you for his compensation, for his pay?"

To the admission of this evidence the plaintiff objected, the court ruling the testimony inadmissible, and excluded it; and the defendant duly excepted.

Samuel Fine was called by the defendant as a witness, but did not testify that he employed the plaintiff, and he was not asked by the defendant's attorney if he did so employ him, and gave no evidence tending to contradict the plaintiff's testimony as to employment.

The jury returned a verdict for the plaintiff; and the defendant alleged exceptions.

*C. W. Rowley*, for the defendant.

*A. L. Spring*, for the plaintiff.

HAMMOND, J.   The defendant objects to the hypothetical questions put to the experts upon the ground that the hypothesis in each was not in accordance with any view of the facts which the jury could properly take of the evidence, and therefore the questions should not have been allowed.

Where expert testimony is offered by way of answers to hypothetical questions, much must be left to the discretion of the presiding justice.   The jury are instructed to disregard the answers unless they find the facts as assumed in the questions; but as it cannot be known in advance what may be the ultimate decision of the jury as to the facts in dispute, the usual practice is to allow counsel in framing a hypothetical question to assume the existence of such facts and conditions as the jury may have a right to find upon the evidence as it then is, or as there may be fair reason to suppose it may thereafter appear to be; and in

determining whether a hypothetical question shall be allowed, the judge in many cases must rely to a great extent upon the good faith of counsel in their statements as to what they expect the evidence will be.

We have examined the evidence in this case as to the services rendered by the plaintiff, and have compared it with the facts assumed in the hypothetical questions to which exceptions were taken, and we see no ground for exception. We think also that it sufficiently appears that the question to Mr. Proctor assumed that he knew what was stated in the bill.

The exception to the exclusion of the question to the defendant as to whether he knew that the plaintiff while acting in the former case was looking to him for pay, is not argued by the defendant, nor is it included in the statement at the head of the defendant's brief of the questions raised by the bill of exceptions. We therefore regard it as waived.

*Exceptions overruled.*