NATHANIEL N. WING, JR. *vs.* COMMONWEALTH

Plymouth. February 4, 1971. — April 15, 1971.

Present: TAURO, C.J., SPALDING, CUTTER, SPIEGEL, & BRAUCHER, JJ.

*Evidence*, Opinion: expert; Of value; Judicial discretion.

At the trial of a proceeding for assessment of damages for a taking by eminent domain of a strip of land for highway purposes through a parcel containing cranberry bogs, there was no error in the admission of the opinion of the owner of the parcel, an experienced cranberry grower, as an expert, that an excessively high water level in the bogs after the taking reduced the crop yield [287–288]; nor was there error in the admission of an opinion of an agronomist, in response to proper hypothetical questions, that a discharge from a highway of calcium chloride would make a bog commercially less valuable. [288–289]

At the trial of a proceeding for assessment of damages for a taking by eminent domain of a strip of land for highway purposes through a parcel containing cranberry bogs, there was no error in the admission

of an opinion of a civil engineer, who had personally observed the property, as to the adequacy of the drainage system constructed for the new highway, although he had used a certain hydraulic study, the figures in which he had determined to be "reasonable and correct," as one basis for his opinion [289–290]; nor was there error in the subsequent admission of an opinion of an owner, operator, and broker of cranberry bogs, who was familiar with the property in question, as to a decrease in the value of the property immediately after the taking based on an examination and observations made more than two years thereafter and on the "drainage problem that had been created there," although he was not an engineer. [290–291]

At the trial of a proceeding for assessment of damages for a taking by eminent domain of a strip of land in a town for highway purposes through a parcel of about ninety-two acres containing woodland, a reservoir, and about twenty-four acres of cranberry bogs, there was no abuse of discretion in the exclusion of the sale price of a parcel in an adjoining town comprising seventy acres of upland and twenty-five acres of cranberry bogs. [291–292]

PETITION filed in the Superior Court on February 2, 1968. The case was tried before *Spring*, J.

*Kevin P. Curry*, Assistant Attorney General, for the Commonwealth.

*J. Owen Todd* (*Norman G. Stone* with him) for the petitioner.

TAURO, C.J. This case is before us on the respondent's substitute bill of exceptions which relate solely to the admission and exclusion of evidence at the trial of the petitioner's claim for damages resulting from a partial land taking by the respondent for highway purposes in Wareham. We conclude there was no error.

The property before the taking consisted of approximately ninety-two acres of land. Of the land taken, approximately eighteen acres were woodland, $\frac{3}{4}$ of an acre was a cranberry bog, and 1.1 acres were a reservoir. After the taking the property was split into two parcels. The one west of the taking consisted of about six acres, largely a reservoir, and the one to the east of the taking consisted of about sixty-six acres, including twenty-four acres of cranberry bogs.

1. The petitioner, the owner of the property, testified over the respondent's objection that in 1967, after the taking, there had been a substantial drop in the production of cran-

berries. He gave as reasons for the drop in the production that "the water depth of the bog . . . was too high, . . . the ditches were all filled up, you couldn't keep the water down . . . [a]nd it also flooded over." The respondent cites *Connor* v. *O'Donnell,* 230 Mass. 39, at 42, which in turn quoted from *Stoddard* v. *Winchester,* 157 Mass. 567 at 575, for the proposition that an expert witness may not give an opinion involving disputed questions of fact. In the present case, however, the witness did not testify that the highway construction was the cause of the damage but only that the high water level reduced the crop yield. The witness possessed firsthand knowledge of the high water level and as an experienced cranberry grower the jury could properly consider his opinion as to the causes of the drop in production. "There is no prescribed formality for the admission of expert testimony. All that is necessary is that the subject matter be one about which special knowledge beyond that possessed by the ordinary juryman will aid the jury in their deliberations, and that a person possessing such knowledge give opinions pertinent to the issues of the case founded upon facts which either are conceded or could warrantably be found upon other evidence." *Lovasco* v. *Parkhurst Marine Ry.* 322 Mass. 64, 67. The question did not assume facts as to which there was no evidence because there was subsequent evidence that the level of water in the bog was too high. "The [expert] witness . . . may base his opinion upon facts observed by himself or within his own knowledge and testified to by himself, or upon facts assumed in the questions put to him and supported either by admitted facts or by the testimony of other witnesses already given *or to be given at the trial,* or upon facts derived partly from one source and partly from the other" (emphasis supplied). *Commonwealth* v. *Russ,* 232 Mass. 58, 73.

2. Charles F. Hastings, Jr., an assistant manager of the Cranberry Marketing Committee, an organization representing the cranberry industry, testified over the respondent's objection that he knew that calcium chloride is a substance usually used for highways in this portion of Massa-

chusetts during the wintertime to melt snow and ice. The witness subsequently testified as to the effect that drainage from the highway would have on the value of the remaining property. The respondent objected on the grounds that the witness was not an expert in regard to drainage and that no foundation had been laid in that there had been no evidence as to the fact or extent of drainage. The witness held a Bachelor of Science degree in Agriculture with a Major in Agronomy from the University of Rhode Island, had planted cranberries and had a limited experience in the growing of cranberries, and had studied the cranberry plant and the manner in which it was grown. He was not called upon to give an expert opinion as to the adequacy of the drainage system, as the respondent contends, but gave his opinion as an agronomist that a discharge of calcium chloride, if it were present, would make a bog commercially less valuable.

The witness did not, as in *Tigar* v. *Mystic River Bridge Authy.* 329 Mass. 514, attempt to put a dollar value on the reduction in value of the property, nor did he rely upon any claimed expert knowledge as a highway engineer or real estate appraiser. The questions were framed hypothetically, and were properly within the scope of examination. As "it cannot be known in advance what may be the ultimate decision of the jury as to the facts in dispute, the usual practice is to allow counsel in framing a hypothetical question to assume the existence of such facts and conditions as the jury may have a right to find upon the evidence as it then is, or as there may be fair reason to suppose it may thereafter appear to be." *Anderson* v. *Albertstamm,* 176 Mass. 87, 91. *Commonwealth* v. *Stirling,* 351 Mass. 68, 73. Testimony as to the existence of the facts assumed in the hypothetical questions was introduced by the petitioner at several points throughout the trial.

3. The respondent contends that it was error to allow the witness, Walter E. Rowley, a civil engineer, to testify as to the adequacy of the drainage system constructed for the new highway on the basis of construction drawings and an

hydraulic figure study supplied by an associate of the petitioner's counsel, on the grounds that such sources constituted hearsay and also that no proper foundation for such testimony had been laid. Within the court's discretion the testimony of a qualified expert may be admissible "although his knowledge of details is chiefly derived from inadmissible sources, because he gives the sanction of his general experience. But the fact that an expert may use hearsay as a ground of opinion does not make the hearsay admissible." *National Bank of Commerce* v. *New Bedford,* 175 Mass. 257, 261. In the instant case the witness's opinion was based on sources completely independent of the plans and figures. He testified that he personally observed the property in question and that his opinion was based in part upon "inspection on the ground." He also testified that he had made his own independent check of the figures in the hydraulic study and determined them to be "reasonable and correct." Thus, the witness was not giving the opinion "of another," as contended by the respondent, but properly used the study, which he had verified by his own check, as one basis in forming his own independent expert opinion. See *Uberto* v. *Kaufman,* 348 Mass. 171, 173, and cases cited.

4. The respondent contends that the court erred in allowing the petitioner's witness Henry Shaw to testify to the decrease in value of the subject property immediately after the taking based on an examination and observations made more than two years after the taking. The witness's testimony established that he was fully familiar with the property, having "sold quite a lot of property down in that vicinity," and that he had seen the bog several times in ten years. "The modern and more enlightened rule is that . . . [after acquired knowledge] is competent to show the mode in which the work was actually constructed, the actual effect of its construction and operation upon the remaining land, and the actual expense, if reasonable, incurred by the owner in adapting his land to the new situation. Such evidence is admitted, not to modify the legal effect of the taking, or to change the rule of damages, but to show more accurately

the true nature of the easement taken." Nichols, Eminent Domain (Rev. 3d ed.) § 23.4. See *Manson* v. *Boston,* 163 Mass. 479; *Valentino* v. *Commonwealth,* 329 Mass. 367, 370; *Kennedy* v. *Commonwealth,* 336 Mass. 181. In this case a reasonable period of time was required to fully assess the damages caused by the taking. It was only after the occurrence of the use of the highway by traffic, and substantial rainfall, that the effect of the design of the respondent's drainage system on the petitioner's remaining land could be adequately evaluated. Thus the lapse of time in this case between the taking and the witness's latest observation of the property for the purpose of appraising the damage was not unreasonable.

Shaw testified that his appraisal was based, in part, on the "drainage problem that had been created there." The respondent argued that Shaw's testimony was improperly admitted on the ground that he was not a qualified engineer. That a drainage problem existed was a fact within the expert knowledge of the witness. As an owner and operator of cranberry bogs, who had acted as a broker for the sale or purchase of some fifty bogs, the witness understood the importance of water control in a cranberry bog and the adverse effect on the value of a bog with inadequate water control. He was entitled to state his opinion as to the adequacy of the water control system of the bog in reaching his appraisal of the diminution in value of the property. Moreover, he was entitled to consider the testimony of a previous witness, Rowley, a civil engineer, as to the existence of a drainage problem on the bog.

5. The respondent contends that the court abused its discretion in refusing to allow a witness to testify as to the price he received for the sale of seventy acres of upland and twenty-five acres of bogs located in Carver, Massachusetts, an adjoining town to Wareham. The trial judge sustained the petitioner's objection to the introduction of such testimony on the ground that there was no showing that the parcels were comparable. The admission of such evidence is clearly discretionary with the trial judge. *Congregation*

*of the Mission of St. Vincent de Paul* v. *Commonwealth,* 336 Mass. 357, 359. *Brush Hill Dev. Inc.* v. *Commonwealth,* 338 Mass. 359, 367.

*Exceptions overruled.*