WILLIAM S. REILLY vs. LOCAL 589, AMALGAMATED
TRANSIT UNION & another[1]
(and a companion case[2]).

Nos. 89-P-713 & 90-P-366.

Suffolk. April 11, 1991. - December 9, 1991.

Present: WARNER, C.J., DREBEN, & IRELAND, JJ.

*Labor*, Fair representation by union, Apportionment of damages. *Laches.*
*Indemnity. Practice, Civil*, Appeal.

In a civil action based on a claim of wrongful discharge from employment,
the judge properly apportioned the damages assessed between the em-
ployer and the employee's union, having found no merit in the plain-
tiff's assertion that the equitable doctrines of laches and "unclean
hands" or that the provisions of G. L. c. 231B, § 4, barred allocation of
damages against the union. [638-639]

In circumstances in which an employee had released his union from liabil-
ity in an action based on his wrongful discharge from employment, no
principle set forth in *Bowen* v. *United States Postal Serv.*, 459 U.S. 212
(1983), supported the employee's claim that his employer was seconda-
rily liable for damages allocated against the union for the union's
breach of duty of fair representation. [640]

In a civil action, the judge did not abuse his discretion by basing the ap-
portionment of damages between the plaintiff's employer and his union
on a hypothetical arbitration award date. [640-641]

There was no merit to a plaintiff's claim that the trial judge had excluded
portions of the plaintiff's testimony. [641]

This court declined to reconsider an issue decided in an earlier appeal in
the same case. [641-642]

BILL IN EQUITY filed in the Superior Court on August 3,
1973.

CIVIL ACTION commenced in the Superior Court Depart-
ment on May 8, 1981.

[1]Massachusetts Bay Transportation Authority.

[2]Massachusetts Bay Transportation Authority vs. John J. Gallahue, Jr.,
& others.

After review reported in 22 Mass. App. Ct. 558 (1986), the cases were consolidated for trial in the Superior Court Department and were heard by *Thomas R. Morse, Jr.*, J.

*Edward B. Ginn* for William S. Reilly.

*Harrison A. Fitch* (*Phinorice J. Boldin* with him) for Massachusetts Bay Transportation Authority.

IRELAND, J. This is an appeal by the plaintiff, William S. Reilly, from an award of damages by a Superior Court judge acting after this court held that damages may be apportioned between an employer and a union where the employer wrongfully discharged an employee and the union violated its duty to fairly represent him. See *Reilly* v. *Local 589, Amalgamated Transit Union*, 22 Mass. App. Ct. 558 (1986) (hereinafter *Reilly I*). In his appeal, Reilly claims that the judge erred in (1) assessing damages against the union; (2) basing the apportionment in part upon a hypothetical date; (3) excluding testimony offered by Reilly; (4) upholding the arbitrator's award excluding preaward interest; and (5) assessing contributions to the retirement fund. We affirm.

The facts pertaining to this dispute are set out in full in *Reilly I*. We therefore summarize only the facts relevant to this appeal. On January 12, 1972, Reilly, then an employee of the Massachusetts Bay Transportation Authority (MBTA) and a member of the Boston Carmen's Union, Division 589, the Amalgamated Transit Union (union), was suspended for five days and demoted from motorman to collector for allegedly violating certain rules of employee conduct. Thereafter, instead of returning to work, Reilly took sick leave. On September 7, 1972, by letter, the MBTA requested that Reilly report to the MBTA's doctor for a physical examination to determine if he was qualified "to return to work as a [c]ollector." Reilly failed to do so and, on September 26, the MBTA's general manager notified him by certified letter that he was discharged from employment.

### Reilly's Equity Case

Reilly filed a grievance based on his suspension, demotion, and discharge. When the union refused to submit his claim

to arbitration, Reilly brought an action in the Superior Court to: (1) compel the union and MBTA to arbitrate; (2) recover damages from the union for breach of its duty of fair representation; and (3) recover damages from the MBTA for wrongful discharge.

On June 22, 1979, Reilly and the union signed: (1) a "Release and Indemnity Agreement," whereby Reilly agreed to indemnify the union for liability resulting from Reilly's complaint; and (2) a "Stipulation and Agreement for Judgment" that Reilly had effectively demanded arbitration and that Reilly's grievances "were not processed to arbitration for reasons other than the merits of his cases." Pursuant to the stipulation, on August 3, 1979, a Superior Court judge entered findings, order and judgment as to the union and directed the union to arbitrate Reilly's grievances if the MBTA were subsequently ordered by the court to arbitrate.

On March 12, 1980, the second day of Reilly's Superior Court trial, the trial judge ordered the MBTA and the union to arbitration and stayed Reilly's equity case pending the final arbitration award. Thereafter, an arbitrator found there was "not sufficient cause" for Reilly's suspension, demotion and discharge and reduced Reilly's discharge to a two-day suspension. On January 14, 1981, the arbitrator ordered that Reilly be "made whole for all benefits lost" due to his suspension, demotion, and discharge, "including back pay, less the two-day suspension and less interim, outside earnings and other appropriate deductions." Despite the MBTA's urgings, the arbitrator found it was beyond his authority "to render a determination on the question of apportionment of damages."

On March 20, 1981, a Superior Court judge confirmed the arbitrator's award and returned the case for assessment of "damages due [Reilly] without respect to the question of apportionment." On September 27, 1982, the arbitrator awarded and, on January 31, 1985, a judgment was entered ordering the MBTA to pay Reilly $189,278.67 with interest from December 20, 1982, and costs.

### The MBTA's Civil Action

On May 8, 1981, based on the union's wrongful refusal to pursue Reilly's grievances, the MBTA filed an action against the union seeking indemnity or contribution for all or part of any judgment for Reilly. The union answered on July 2, 1981, and, on March 7, 1984, brought a third-party action against Reilly to enforce the June 22, 1979, release and indemnity agreement. A Superior Court judge ruled that under the release and indemnity agreement, amounts the union owed the MBTA should be deducted from Reilly's recovery. Unsure whether Massachusetts law permitted apportionment of damages between the MBTA and the union, the judge reported that issue to this court.

In *Reilly I*, we upheld the propriety of apportionment of damages between an employer and a union under Massachusetts law. *Id.* at 580. However, as there was insufficient evidence to determine whether Reilly's damage award should be apportioned between the MBTA and the union, we remanded the MBTA's civil action and directed the judge to apply the principles of *Bowen* v. *United States Postal Serv.*, 459 U.S. 212 (1983) (hereinafter *Bowen*), in assessing damages (if any) against the union. *Reilly I*, 22 Mass. App. Ct. at 580. We also remanded Reilly's equity case to the Superior Court with leave to vacate the judgment to provide for Reilly's indemnification of the union (under the release and indemnity agreement) and to consolidate that case with the MBTA's action, if appropriate. *Ibid.*[3]

On August 10, 1987, the two remanded actions were consolidated for trial. At trial, the MBTA offered evidence of five other arbitration proceedings between the union and the MBTA. Based on the average length of those prior proceedings, the MBTA argued that, had the union pursued Reilly's grievances in a timely manner, the probable length of his arbitration would have been ten months. The union's deadline

---

[3]Reilly's equity case and the MBTA's civil action had previously been consolidated on June 2, 1983. However, the consolidation order was vacated on November 22, 1983, pursuant to a stipulation entered into by the parties. *Reilly I, supra* at 578 n.25.

to request arbitration of Reilly's grievance under the collective bargaining agreement was February 26, 1973 (sixty days after the MBTA denied Reilly's grievance). The MBTA asserted that had the union requested arbitration by February 26, an award would have issued by December 31, 1973, ten months thereafter. Therefore, the MBTA argued, the union was responsible for Reilly's damages from December 31, 1973, to January 14, 1981, when the arbitration award actually issued. Reilly contested use of a hypothetical award date, arguing that twenty-eight months, "the actual length of arbitration" (i.e., October 31, 1978 [union notified MBTA of its wrongful failure to pursue Reilly's grievance] to March 20, 1981 [award confirmed]), should determine the MBTA's liability.

The trial judge agreed with the MBTA and set a hypothetical arbitration award date of December 31, 1973. The judge concluded that: (1) the MBTA was liable for any damages suffered by Reilly from January 12, 1972 (the date of Reilly's suspension) through December 31, 1973; (2) the union was liable from January 1, 1974, through October 31, 1978 (when the union notified the MBTA of its error in failing to pursue Reilly's grievance to arbitration); (3) the MBTA and the union were equally liable from November 1, 1978, through July 31, 1979 (the date of the stipulation for judgment in the equity case); (4) the MBTA was liable from August 1, 1979, through March 31, 1981 (when the arbitration award was confirmed); and (5) the union was entitled to indemnity under the release and indemnity agreement.[4]

## *Discussion*

1. *Apportionment of damages.* In *Reilly I, supra* at 580, we ordered the trial judge to apply the principles of *Bowen* to apportioning Reilly's damages. In *Bowen,* the Supreme Court held that a union could be held liable for back pay if the union's breach of its duty of fair representation increased the

---

[4]The MBTA has neither appealed from the judgment nor argued error in the apportionment of damages. See *Hartford Ins. Co.* v. *Hertz Corp.,* 410 Mass. 279, 287-288 (1991).

employee's loss beyond that caused by the employer's wrongful discharge. *Id.* at 230.

On appeal, Reilly argues certain equitable principles preclude any assessment of damages against the union in this case. Although the judge addressed none of those principles specifically, we conclude from the entry of judgment allocating some damages against the union that the judge found Reilly's equitable arguments to be without merit. *Fales* v. *Glass*, 9 Mass. App. Ct. 570, 575 (1980). We agree.

Reilly first argues allocation against the union is barred by laches due to the MBTA's lengthy failure (from at least 1973, when Reilly filed his equity case, to 1981) to seek contribution or indemnification.[5] While the MBTA's delay in asserting its contribution claim was considerable, see, e.g., *Myers* v. *Salin*, 13 Mass. App. Ct. 127, 139 (1982) (laches established on delay of two years); *Stokes* v. *Commissioner of Correction*, 26 Mass. App. Ct. 585, 590 (1988) (three years); and *Chiuccariello* v. *Building Commr. of Boston*, 29 Mass. App. Ct. 482, 487-489 (1990) (six months), in order to establish laches, Reilly was also required to demonstrate that he relied on that substantial delay to his detriment. *Kenny* v. *Commissioner of Correction*, 399 Mass. 137, 140 (1987). *Matter of Kerlinsky*, 406 Mass. 67, 75-76 (1989). *Myers*, *supra* at 137-138. This he did not do. While in an affidavit in support of summary judgment based on laches, Reilly averred that had the MBTA "asserted any claim whatsoever alleging apportionment, contribution or indemnity against the Union before June 22, 1979, [he] certainly would not have entered into the Release and Indemnity Agreement," at trial he testified he signed the indemnity agreement because he "knew that if there was ever a judgment against the Carmen's Union    . . . [Reilly] could never go back and run for office." Based on that testimony, the trial judge could properly have found that Reilly exe-

---

[5]On appeal, Reilly claims the MBTA's action for contribution or indemnification was waived or is barred by the statute of limitations. As those affirmative defenses were not pressed at trial, they are not open on appeal. See, e.g., *Leahy* v. *Local 1526, AFSCME*, 399 Mass. 341, 351-352 (1987).

cuted the indemnity agreement to further his political aspirations rather than because of the MBTA's inaction. *Myers, supra* at 138 ("A finding concerning laches, based upon oral evidence, however, will not be disturbed unless clearly erroneous").

Reilly next argues apportionment is barred by the MBTA's "unclean hands." Specifically, he argues that because the MBTA "inequitably" failed to settle his case before arbitration, it should not be permitted the equitable remedy of apportionment. The question whether to deny relief based on "unclean hands" is committed to the broad discretion of the trial judge. *Fales* v. *Glass*, 9 Mass. App. Ct. at 575. As the trial evidence suggested the MBTA relied on the union's decision *not* to pursue Reilly's grievance, the judge, in the proper exercise of his discretion, could conclude there was nothing inequitable in the MBTA's decision not to settle prior to the order to arbitrate. *Reilly I, supra* at 576 (MBTA not bound to correct Reilly's grievances where evidence suggested that union did not press those grievances). See also *Hines* v. *Anchor Motor Freight, Inc.*, 424 U.S. 554, 572-573 (1976) (Stewart, J., concurring); *Bowen, supra* at 225-228; and *Niro* v. *Fearn Intl., Inc.*, 827 F.2d 173, 179 (7th Cir. 1987) (recognizing employer's justifiable reliance on union's arbitral decision).

Finally, based on G. L. c. 231B, § 4, as appearing in St. 1962, c. 730, § 1,[6] Reilly urges apportionment is barred by the release and indemnity agreement. However, G. L. c. 231B, § 4, applies only to tortfeasors jointly and severally liable. See, e.g., *Scannell* v. *Ed. Ferreirinha & Irmao, Lda.*, 401 Mass. 155, 165 (1987); *Grace* v. *Buckley*, 13 Mass. App. Ct. 1081, 1082 (1982). As neither the union nor the MBTA participated in the other's breach, see *Bowen, supra* at 223 n.11; *Vaca* v. *Sipes*, 386 U.S. 171, 197 (1967);

---

[6]"When a release or covenant not to sue or not to enforce judgment is given in good faith to one of two or more persons liable in tort for the same injury . . . (b) [i]t shall discharge the tortfeasor to whom it is given from all liability for contribution to any other tortfeasor."

and *Pitts* v. *Frito-Lay, Inc.*, 700 F.2d 330 (6th Cir. 1983), Reilly's reliance on G. L. c. 231B, § 4, is misplaced.

In the event that assessment against the union is not barred, Reilly contends that, under *Bowen*, the MBTA is secondarily liable for damages assessed against the union. While there is some language in *Bowen*[7] which supports Reilly's contention, where, as here, Reilly voluntarily released his union from liability, no principle set forth, in *Bowen* allows Reilly to collect the union's apportioned damages from the MBTA.[8]

2. *Use of a hypothetical date.* Reilly also argues the judge erred in basing apportionment of damages on a hypothetical arbitration award date. In particular, Reilly argues that as arbitration actually occurred in his case, the trial judge erred in not apportioning damages based on the full twenty-eight month arbitration period rather than on a "hypothetical" ten-month period. We do not agree.

Determination of a fair apportionment of damages between employer and union necessarily involves the exercise of discretion. See *Reilly I, supra* at 575-576 & n.22. See also *San Francisco Web Pressmen & Platemakers' Union No. 4* v. *NLRB*, 794 F.2d 420, 424 (9th Cir. 1986) (recognizing NLRB's broad discretion in fashioning back pay award in wrongful discharge/breach of fair representation cases). Indeed, while *Bowen* did not expressly legitimize use of a hypothetical arbitration period in apportioning damages,[9] it left "considerable flexibility as to methods of making an apportionment between an employer and a union of the expense caused by each in an unfair representation case." *Reilly I, supra* at 576 n.22. Several courts since *Bowen* have approved

---

[7]*Bowen, supra* at 223 n.12.

[8]We note also that in discussing the prospect of secondary liability, the *Bowen* Court did not eliminate the possibility that the employer might still seek contribution from the union. See *Bowen, supra* at 223 & n.12.

[9]"We need not decide whether the District Court's instructions on apportionment of damages were proper. The Union objected to the instructions only on the ground that no back wages at all could be assessed against it. It did not object to the manner of apportionment if such damages were to be assessed." *Bowen*, 459 U.S. at 230 n.19.

the use of a hypothetical award date in apportionment cases. See, e.g., *Camacho* v. *Ritz-Carlton Water Tower*, 786 F.2d 242, 245 (7th Cir. 1986); *San Francisco Web Pressmen & Platemakers' Union No. 4, supra*; *Velez* v. *Puerto Rico Marine Mgt., Inc.*, 693 F. Supp. 1335, 1344-1346 (D. Puerto Rico 1988); *Martino* v. *Transport Wkrs. Union*, 505 Pa. 391, 409 (1984).

In keeping with our order "to appraise the extent to which the award was caused by the [u]nion's failure to press promptly and reasonably a fair adjustment of Reilly's grievances," *Reilly I, supra* at 576, the trial judge found, based on evidence of other arbitrations between the union and the MBTA, that had the union properly pursued arbitration of Reilly's grievances, Reilly would have been reinstated by December 31, 1973. As the period between the court order for arbitration of Reilly's grievance (March 12, 1980) and the arbitrator's award (January 14, 1981) was ten months, we cannot say the judge abused his considerable discretion in imposing a ten-month hypothetical period (February 26 through December 31, 1973). *Bowen, supra* at 230.

3. *Exclusion of testimony offered by Reilly.* Reilly also suggests that the judge erred in "disallowing" his testimony of the MBTA's "outrageous" conduct to establish the MBTA's long-standing pattern of his mistreatment and the MBTA's intent to get rid of him at all costs. Our review of the trial transcript, however, shows that, after extended argument, the judge did not exclude Reilly's testimony but rather admitted the testimony de bene, subject to a motion to strike. As the MBTA made no such motion, the testimony was admitted and given full probative effect. *Peterson, petitioner*, 354 Mass. 110, 115 & n.1 (1968). *Palmer* v. *Palmer*, 23 Mass. App. Ct. 245, 249 (1986).

4. *Other claims.* Reilly's remaining claims, for interest on the damage award "from the date of the breach established by the arbitrator" and for an additional $13,817.20 retirement contribution award, were disposed of in *Reilly I.* "Reilly is entitled to no other prejudgment interest or attorney's fees than what the arbitrator included in his award."

*Id.* at 577. "[T]he judgment entered on February 1, 1985 [awarding Reilly $189,278.67], should be taken as establishing the aggregate award to Reilly to be met by the MBTA and the Union . . . ." *Id.* at 578. As is our practice, we "decline[] to reconsider questions which have been decided in an earlier appeal in the same case . . . [unless] we are persuaded that a previous holding in the same case was in error." *New England Merchants Natl. Bank* v. *Old Colony Trust Co.*, 385 Mass. 24, 26 (1982). See also *Frank D. Wayne Assocs., Inc.* v. *Lussier*, 394 Mass. 619 (1985). This is not such a case. See *Sansone* v. *Metropolitan Property & Liab. Ins. Co.*, 30 Mass. App. Ct. 660 (1991).

*Judgment affirmed.*