FOREIGN CAR CENTER, INC., & others[1] *vs.* SALEM SUEDE,
INC., & another.[2]

No. 94-P-297.

Essex. February 15, 1995. - February 2, 1996.

Present: WARNER, C.J., PERRETTA, & SMITH, JJ.

*Evidence,* Relevancy and materiality, Expert opinion, Hearsay. *Environ-
ment,* Air pollution. *Negligence,* Proximate cause. *Witness,* Expert.
*Practice, Civil,* Instructions to jury.

At a civil trial the judge correctly excluded certain evidence as irrelevant;
his exclusion of certain relevant evidence was harmless error where it
was not demonstrated to have made a material difference in the outcome
of the case; and error, if any, in his excluding certain other evidence was
not shown to be prejudicial. [18-22]
At the trial of a civil action, the judge correctly admitted certain relevant
evidence; incorrectly admitted certain hearsay evidence which was,
however, merely cumulative of other properly admitted evidence; and
adequately instructed the jury, properly refusing to give a requested
instruction that was not based on the evidence. [22-24]

CIVIL ACTION commenced in the Superior Court Depart-
ment on March 24, 1983.

The case was tried before *Katherine Liacos Izzo,* J.

*Stephen B. Deutsch* for the defendants.

*Albert P. Zabin* for the plaintiffs.

SMITH, J. The plaintiffs, Foreign Car Center, Inc. (FCC),
FCC owner Stefano Picciotto (Picciotto), his wife Judith Pic-
ciotto (Judith), and FCC employees Juan B. Nunez and Jose
B. Ferreras brought an action in the Superior Court against
Salem Suede, Inc. (Salem Suede), and Salem Suede's presi-
dent and landlord, Zion Realty Corporation (Zion). FCC
claimed that its business had suffered damage as a result of

[1]Stefano Picciotto, Judith S. Picciotto, Juan B. Nunez, and Jose B. Fer-
reras.

[2]Zion Realty Corporation.

certain odors and emissions from Salem Suede's tannery. The individual plaintiffs claimed that they had personally suffered injuries as a result of the odors and emissions. All of the plaintiffs sought damages on the theories of negligence, nuisance, and strict liability.

At trial, the case was submitted to the jury on the negligence and nuisance theories only. Salem Suede was found liable in nuisance and negligence for odors and emissions from its leather finishing plant. Zion was found liable for failing to prevent a nuisance.

We summarize certain portions of the plaintiffs' evidence as background for our analysis. Later, when we consider an issue, we will recite evidence that is relevant to that particular issue.[3]

In 1972, FCC, whose business involves the repair and sale of automobiles, opened on property adjacent to Salem Suede. At least until 1979, FCC and its individual employees did not experience any problems with pollution or emissions from Salem Suede or any other source.

In 1979, however, Picciotto complained to Salem Suede that particulates, which he believed were emissions from Salem Suede's tannery, were falling onto his automobiles at his place of business. These particulates smelled bad and were sticky. They had to be washed from the automobiles promptly or they would stick and ruin the cars' finish. Picciotto also noticed strong lacquer-like odors. The particulates and odors commenced at the time that Salem Suede opened new vents in its building. Picciotto also complained to the Department of Environmental Quality Engineering (DEQE). On December 3, 1979, DEQE issued a notice of violation to Salem Suede. In the ensuing years, Salem Suede and DEQE engaged in a continual dialogue concerning the emissions coming from Salem Suede. Besides the particulates, DEQE was concerned with odors and with volatile organic compounds coming from Salem Suede.

Some time in 1980 or 1981, as a result of continued complaints from Picciotto, Salem Suede installed additional

---

[3]Except for the plaintiff Nunez, the parties have not furnished us with portions of the transcript concerning the injuries suffered by the other individual plaintiffs. However, the defendants do not challenge, on appeal, that the individual plaintiffs were injured. Rather, the challenge is directed to the *cause* of the injuries.

filters. These filters did not change the composition of the particulates but did make them smaller. Further modifications to Salem Suede's operations were approved by DEQE, but the problems persisted. In 1986, DEQE issued an order of noncompliance to Salem Suede. It threatened to fine Salem Suede and to shut it down unless it instituted new programs to reduce the emission of volatile organic compounds. In 1987, Salem Suede installed new equipment that brought an end to the pollution problems, except for a short episode in 1991 caused by lack of adequate maintenance.

1. *Claims that judge excluded relevant evidence.* At trial, "[t]he plaintiffs had the burden of proving that the alleged nuisance or negligence was the proximate cause of their injuries." *Alholm* v. *Wareham*, 371 Mass. 621, 626 (1976). The defendants denied that any odors or emissions that may have come from their factory caused the plaintiffs' injuries. Rather, they claimed at trial that (1) other businesses in the area were responsible for the odors and emissions that caused damage to FCC and to the individual plaintiffs, and (2) solvents, especially lead, which FCC used in the operation of its business, caused the individual plaintiffs' injuries. Several of the issues raised on appeal by the defendants are claims that the judge excluded evidence that was relevant on the issue of causation.

When a claim is made that relevant evidence has been excluded, the first inquiry is whether the evidence is in fact relevant. "Relevance is a broad concept, . . . and any information which tends to establish or at least shed light on an issue is relevant." *Adoption of Carla*, 416 Mass. 510, 513 (1993). See also *Green* v. *Richmond*, 369 Mass. 47, 59 (1975). If relevant evidence is erroneously excluded, "the appropriate test [to determine if the exclusion created reversible error] is whether the proponent . . . has made a plausible showing that the trier of fact might have reached a different result if the evidence had been before it. Thus the erroneous exclusion of relevant evidence is reversible error unless, on the record, the appellate court can say with substantial confidence that the error would not have made a material difference." *DeJesus* v. *Yogel*, 404 Mass. 44, 48-49 (1989). For instance, "[i]n some instances, an error would not prejudice the case because the improperly excluded evidence would have been 'merely cumulative' of other evidence pointing in the same factual

direction." *Id*. at 49 n.7, citing *Pina* v. *McGill Dev. Corp.*, 388 Mass. 159, 164 (1983).

a. *Exclusion of evidence that other businesses were sources of odors and emissions.* The defendants claim that the judge committed error by excluding evidence that other businesses were the source of odors and emissions. The defendants attempted to offer evidence that Picciotto wrote two letters to DEQE, dated October 29, 1986, which stated in part that, during 1982 and 1983, two leather factories (not Salem Suede) were "emitting maximum odors and particulates that were effecting [*sic*] the neighbors." The judge sustained the plaintiffs' objection, ruling that such evidence was "too far afield."

The evidence was clearly relevant because the author of the letters was one of the plaintiffs (Picciotto), and the letters were offered to show that, during the relevant period, Picciotto had complained that two other leather factories were emitting odors and emissions. The plaintiffs argue that the letters only show that the odors and emissions were affecting "the neighbors" and not FCC. This argument is strained. Whether FCC was one of the "neighbors" goes to the weight of the evidence and not its admissibility. However, although the evidence was relevant, its exclusion was harmless error. There was considerable testimony from Picciotto on cross-examination that the neighborhood contained several factories that emitted odors; that more than once Picciotto had blamed odors on Salem Suede which later turned out to be from other sources; and that FCC was downwind from a factory that cleaned barrels and emitted odors.[4]

b. *Exclusion of evidence that the defendants did not receive*

---

[4]The judge properly excluded certain photographs that allegedly showed emissions from other businesses in the area. There was no evidence of what the "emissions" were, and there was no foundation laid as to whether the photographs were fair and accurate representations of the emissions relevant to this case.

Contrary to the defendants' claim, the judge did not exclude certain DEQE documents which indicated that, on some occasions, the odors and particulates emanated from sources other than Salem Suede. Rather, she did not permit the admission of the documents at the time the defendants offered them. She stated that she would reconsider her ruling if the defendants could relate the DEQE reports to the testimony concerning the plaintiffs' claims of injury. The record shows that the defendants failed to make the connection. "The judge made no 'unequivocal adverse ruling' against a line of questioning . . . nor did [s]he exclude the total inquiry by [her] several rulings. . . . [C]ounsel could have pursued the point, but he

*any complaints from either its employees or other nearby businesses.* The defendants claim that the judge committed error by excluding evidence that neither their employees nor owners of other nearby businesses had complained of symptoms caused by odors or emissions from Salem Suede.

Zion, one of the defendants, was not permitted to testify that, over the entire period he had been operating Salem Suede, none of his more than 200 employees had ever complained to him about any symptoms caused by odors or emissions. In addition, Zion was not allowed to testify that, over the same period, he had received only one complaint from a neighbor, other than Picciotto, concerning Salem Suede's emissions, and after investigation, it was determined that those emissions came from another company. Furthermore, other owners of nearby businesses were not permitted to testify that they had not received any complaints from their employees regarding odor-related symptoms.

In *Silver* v. *New York Cent. R.R. Co.*, 329 Mass. 14, 19-21 (1952), a plaintiff brought an action against the railroad for injuries she sustained as a result of the cold temperature in the railroad car in which she was a passenger. The court held that testimony by the porter of the plaintiff's railroad car that eleven other passengers in that car made no complaint to him would be admissible if the other passengers were in substantially the same situation concerning the cold as the plaintiff; if the porter's duties were shown to include the receipt of such complaints; if he was shown to have been present and available to be spoken to; and if it were shown to be unlikely that the other passengers complained to some other employee of the defendant.

As can be readily seen, there are a number of conditions that must be met before evidence of a lack of complaints may be received in evidence. Here, on this record, the judge properly could have found that the conditions were not met.[5]

chose not to." *Olson* v. *Ela*, 8 Mass. App. Ct. 165, 170-171 (1979), quoting from *Commonwealth* v. *Cheek*, 374 Mass. 613, 615 (1978). See also *Shaw* v. *Rodman Ford Truck Center, Inc.*, 19 Mass. App. Ct. 709, 713-714 (1985) (no error where the defendant "appears to have spurned the judge's offer to reconsider his ruling as the trial progressed").

[5]For example, a parish priest was not allowed to testify that he had not received any complaints from his parishioners concerning health symptoms caused by odors and emissions from Salem Suede. However, there was no

There was no error in the exclusion of the evidence.[6]

c. *Exclusion of testimony that the presence of lead on FCC premises constituted a health hazard to individual plaintiffs.* A defense expert, an environmental consultant, was not allowed to give his opinion that the presence of lead on FCC's property constituted a health hazard to the individual plaintiffs or whether FCC posed a greater health hazard than Salem Suede to the individual plaintiffs. Even if we assume the evidence was relevant, its exclusion did not prejudice the defendants.

There was ample testimony that a considerable amount of lead and other harmful solvents was found on FCC's premises. In addition, another expert for the defendants testified about the high concentration of lead found in the blood of the most seriously injured plaintiff (Nunez) and the effect that lead has on the body. Therefore, the excluded evidence, even if relevant, was " 'merely cumulative' of other evidence pointing in the same factual direction." *DeJesus* v. *Vogel*, 404 Mass. at 49 n.7.

d. *Exclusion of the costs of consultants and measures employed by the defendants to reduce emissions.* There was evidence in considerable detail of the remedial steps Salem Suede had taken to reduce the amount of its emissions. The evidence included: the number of consultants it hired; the different kinds of machines including computers that it installed; and other improvements undertaken by Salem Suede including the raising of its factory's stacks. The judge, while admitting evidence of the remedial steps taken by Salem Suede, excluded evidence of the costs of these various undertakings. Assuming, without deciding, that evidence of the costs was relevant, the defendants were not prejudiced by its exclusion in view of the considerable evidence it introduced concerning the various steps it had taken to remedy the emissions problem.

e. *Exclusion of evidence comparing Salem Suede's emission control facilities with others.* Neither the president nor the

evidence of where the parishioners lived in relation to Salem Suede and, therefore, no evidence that the parishioners were "similarly situated" in relation to the individual plaintiffs.

[6]The defendants also argue that the excluded evidence discussed in 1(a) & (b), *supra*, was probative on the issue of the character of the neighborhood, an issue relevant to a nuisance action. Their claim is without merit as they introduced ample evidence of the character of the neighborhood.

production manager of Salem Suede was allowed to testify that other nearby tanning and finishing facilities and facilities throughout the country and South America had primitive emission controls compared to Salem Suede. There was no error. We fail to see the relevancy of the evidence. In any event, there was testimony from the defendants' witnesses about Salem Suede's "state of the art" equipment.

f. *Exclusion of expert testimony on the reasonableness of Salem Suede's actions.* The defendants argue that the judge committed error when she excluded testimony of two defendants' expert witnesses about (1) whether Salem Suede had taken reasonable steps in response to Picciotto's complaint and (2) whether Salem Suede's manufacturing and emissions control equipment was "reasonable and appropriate" as of August, 1986, and whether it constituted "Reasonably Available Control Technology" within the meaning of the DEQE regulations.

The plaintiffs' argument that the expert witnesses could not testify regarding an issue that is ultimately for the jury to decide is without merit. An expert witness may give testimony "on matters within the witness's field of expertise [and this testimony] is admissible whenever it will aid the jury in reaching a decision, even if the expert's opinion touches on the ultimate issues that the jury must decide." *Martel* v. *Massachusetts Bay Transp. Authy.*, 403 Mass. 1, 3-4 (1988) (judge erred in excluding plaintiff's proffered evidence as improper expert opinion evidence on ultimate issue in case), quoting from *Simon* v. *Solomon*, 385 Mass. 91, 105 (1982) (expert may offer opinion on the ultimate issues that the jury must decide).

The plaintiffs' argument that the testimony was properly excluded because defense counsel's questions did not set forth all the assumptions upon which the witnesses' testimony was based also fails. "There is no prescribed formality for the admission of expert testimony." *Wing* v. *Commonwealth*, 359 Mass. 286, 288 (1971), quoting from *Lovasco* v. *Parkhurst Marine Ry.*, 322 Mass. 64, 67 (1947). "The [expert] witness . . . may base his opinion upon facts observed by himself or within his own knowledge and testified to by himself, or upon facts assumed in the questions put to him and supported either by admitted facts or by the testimony of other witnesses already given or to be given at the trial, or upon facts derived partly from one source and partly from the other." *Wing v. Commonwealth*, 359 Mass.

at 288, quoting from *Commonwealth* v. *Russ*, 232 Mass. 58, 73 (1919). "[C]ounsel is under no obligation to use hypothetical questions in eliciting opinions. . . . It is not necessary that the question include all relevant facts; the effect of omission of relevant facts upon the expert's opinion may be tested on cross-examination." Liacos, Massachusetts Evidence § 7.10.2, at 416-417 (6th ed. 1994). In these circumstances, it was not necessary for defense counsel to include hypothetical facts in the question.

Although it was error for the judge to exclude the experts' opinions, we hold that it did not make a material difference in the outcome of the trial. The defendants' expert testified regarding the measures and equipment that Salem Suede put in place in order to ensure that pollutants would not escape from its facility. The experts testified that Salem Suede had installed state of the art equipment which was successful in combating the problems of odors and particulates. Also in evidence were efforts made by Salem Suede to comply with DEQE regulations. The experts' opinion that the defendants' conduct was reasonable was implicit in their answers to the other questions put to them.

2. *Claims that the judge admitted improper evidence.*

a. *Introduction of Material Safety Data sheets.* The defendants argue that Material Safety Data (MSD) sheets[7] should not have been in evidence because they were irrelevant and prejudicial. We disagree.

The defendants objected to the use of the MSD sheets during the cross-examination of one of their experts. They contended that it was unclear from where the sheets came and whether the compounds described in the sheets were ever used by Salem Suede. In response to this objection, the judge said that she would "allow these questions in the cross-examination of this witness, and then if they [the MSD sheets] aren't allowed in evidence I will instruct the jury to disregard these statements." Later, after defendants' counsel admitted at sidebar that the sheets came from Salem Suede, the plaintiff moved to have the sheets introduced in evidence. The defendant never moved to strike the data sheets or the testimony related to them.

---

[7]The MSD sheets contained information about the chemical composition of certain pigments used in the tanning process. The parties disputed whether the pigments at issue were ever used by Salem Suede.

"Where evidence is admitted conditionally it is incumbent upon the objecting party later to move to have it struck; otherwise he has no ground upon which to support his earlier objection." *Peterson, petitioner*, 354 Mass. 110, 115 (1968). See *Palmer* v. *Palmer*, 23 Mass. App. Ct. 245, 249 (1986); *Reilly* v. *Local 589, Amalgamated Transit Union*, 31 Mass. App. Ct. 633, 641 (1991). Because the defendants failed to move to strike, they cannot now claim error.

In any event, the MSD sheets were clearly relevant as to the source of the lead that the defendants claimed was the cause of one of the plaintiff's (Nunez's) injuries. The MSD sheets tended to demonstrate that the lead came from Salem Suede.

b. *Introduction of DEQE press release.* The plaintiffs were allowed to place in evidence a DEQE press release which stated, among other things, the following:

> "Salem Suede has had a protracted record of emitting excessive levels of volatile organic compounds from its leather coating operation, causing deposits of particulates and unpleasant odors in the surrounding neighborhood."

> " 'Unless this company comes into compliance with the clean air regulations of this state, we will not hesitate to use our new statutory authority to levy whatever cash penalties are appropriate,' said DEQE Commissioner S. Russell Sylva."

The admission in evidence of the press release was error. It was hearsay, and it appears to us that no exception to the hearsay rule applies. There was, however, ample evidence introduced at the trial that Salem Suede over the years had violated, more than once, DEQE regulations. The press release, although its tone was somewhat harsh, was merely cumulative of other evidence on the same subject.

3. *Claimed error in the judge's instructions to the jury.* The defendants claim that the judge committed error (1) in misinstructing the jury on the effect of a violation of a regulation in regard to nuisance and (2) in refusing to instruct the jury that in order to be liable in a nuisance action the harm caused must be of a degree that would cause significant harm to an ordinary person.

In regard to the first claimed error, we have read the judge's instructions, and it appears to us that the judge adequately covered the topic and that the jury could not have been misled by her choice of words.

As to the second claimed error, the defendants do not argue that omission of a "sensitivity" instruction was error in regard to the individual plaintiffs. Rather, they claim that the requested instruction should have been given because FCC could have been found to have been unusually susceptible to odors and particulates given the nature of its business and the surrounding area.

There was nothing in the evidence that demonstrated that FCC was more sensitive to odors and emissions than other establishments in the area. Therefore, there was no error.

*Judgments affirmed.*