Forde, J.
In this action to recover a $20,000 death benefit under a life insurance policy, the trial court found for the plaintiff on the breach of contract claim, and for the defendant insurance company on the plaintiffs Chapter 93A claim. The defendant has appealed on three grounds, as follows: First, the court erred in allowing a prior attorney for the plaintiff to testily concerning the content of a conversation he had with the insurance agent who sold the policy to the insured. Second, based on the evidence of record, the court erred in applying the doctrine of equitable estoppel. Third, because the court allowed certain of the defendant’s requests for rulings, judgment in favor of the plaintiff was error.
Boston Mutual Life Insurance Co. (“Boston Mutual”) refused to pay the life insurance proceeds to the named beneficiary, Eleanor Dunigan, claiming that its insured, Edward F. Simmons, had made material misrepresentations on his application for insurance. The plaintiff and Mr. Simmons had lived together for many years. In 1992 an agent of Boston Mutual, Anthony Silva, visited their home while making door-to-door cold calls in the neighborhood. Three insurance policies, including Mr. Simmons’ life insurance policy, issued as a result of Mr. Silva’s visit. At the initial solicitation, Boston Mutual’s agent was informed by Mr. Simmons that he would like to purchase insurance but could not, because he was in poor health. The agent, nevertheless, submitted an application for insurance on behalf of Mr. Simmons to Boston Mutual with the caveat that a medical examination would be needed. After the examination the defendant issued the life insurance policy, but at a premium much higher than anticipated. Mr. Silva came to know the plaintiff and Mr. Simmons quite well, visiting in person on numerous occasions to collect premiums and speaking with the plaintiff many times on the telephone.
The policy lapsed and was reinstated or renewed on more than one occasion. The lapses occurred as a result of nonpayment of premiums. On each occasion Mr. Silva collected the premiums in cash, prepared the necessary paperwork, and submitted the policy for reinstatement or renewal. After the most recent lapse of the policy prior to the insured’s death, Mr. Silva visited the home of Mr. Simmons and Ms. Dunigan. As was the practice of the insurance company’s agents, Mr. Silva filled out the paperwork necessary to reinstate the policy. Because Mr. Simmons’ work made it difficult for Mr. Silva to find him at the house, the salesman left the completed forms with the plaintiff to be signed by herself and the insured. Mr. Silva returned some time subsequently, retrieved the signed forms, and sub *2 mitted them to Boston Mutual which reinstated the policy. Mr. Simmons’ death, because it occurred within two years of the most recent policy renewal, prompted an investigation as a result of which the defendant discovered that the information provided for the reinstatement of the policy misrepresented the true state of the health of the insured.
The trial court found that when the insured signed the application for insurance he relied on Boston Mutual’s agent’s representations and assurance that everything was in order. The court also found that
at all times [the insured] acted in good faith, gave correct medical information to defendant’s agent... relied on Mr. Silva’s representations that [he] would correctly record and communicate same to the defendant ... signed all relevant documents solely on the basis of Mr. Silva’s reassurance that everything was in order and that everything would be fine ... had no reason to believe that he did not qualify for the insurance at the price offered by Mr. Silva on the defendant’s behalf... [and] did not collude with Mr. Silva to misrepresent, defraud or otherwise mislead the defendant.
The defendant claims that the trial court’s allowance of its “requests for rulings of law” numbered 3,4, and 5 is inconsistent with the court’s findings of fact, or, following the defendant’s argument more closely, preclude the court’s finding for the plaintiff. Assumed in that logic is the acknowledgment that the “requests for rulings of law” in question are really requests for findings of fact, or that the defendant is interpreting them as such. If they are requests for findings of fact, they need not have been responded to at all. However, the trial judge allowed all three. Of the three requests in question, only the request numbered 4 states a proposition of law. Moreover, the defendant’s interpretation of its allowance to be a statement of fact is misplaced. Contrary to the defendant’s assumption, based on the allowance of the request numbered 4 the court did not find that the insured, Edward Simmons, knew the contents of the document he signed.
A request to the trial court for a ruling may be allowed as a perfectly correct statement of an abstract principle of law but one that is rendered immaterial by the facts found. Liberatore v. Town of Framingham, 315 Mass. 538, 543 (1944). Granting the defendant’s request numbered 4 as a correct statement of existing law, therefore, was not inconsistent with a finding for the plaintiff. See Godfre v. Caswell, 321 Mass. 161, 162 (1947). It is not inconsistent “for the judge to have granted the request and then, after weighing all the evidence, to have found for the plaintiff.” Dangelo v. Farina, 310 Mass. 758, 759 (1942).
The defendant’s requests for rulings of law, numbered 3 and 5, once again demonstrate the “chronic problem” which accompanies “warrants” requests, described in the Reporter’s Notes to Rule 64A of the Rules of Civil Procedure, as amended in 1996. The request numbered 3 is actually a request for a finding of fact that the insured did not sign a blank application. Its allowance is clearly not inconsistent with the trial court’s findings. The request numbered 5 articulates a request for a finding of fact under the guise of a “warrants” request. The request is beyond the allowable scope of such requests under Rule 64A(b)(1), and should, therefore, have been denied. Having been allowed, “it simply means that there is sufficient evidence on which the court could rule in [the defendant’s] favor.” Mass. R. Civ. P., Rule 64A, Reporter’s Notes-1996. It appears that the defendant has made the error, so prevalent in this area, of interpreting the court’s allowance of the “warrants” request to mean that a finding for the requestor is required as a matter of law. It is not. The court may allow such a “warrants” request and then properly find against the requesting party. Id. The defendant also argues that, based on the evidence of record, the court erred in applying the doctrine of equita *3 ble estoppel in order to find in favor of the plaintiff. Though not stated in the simplest of terms, the defendant’s argument is, in essence, that by signing the application for reinstatement after it had been filled in by the defendant’s agent, the insured could not avoid the consequences of the misrepresentations contained therein, which misrepresentations provided a basis for rescission of the policy. The defendant cites John Hancock Mutual Life Ins. Co. v. Schwartzer, 354 Mass. 327 (1968) to support its argument.
In Schwartzer, the company’s soliciting agent received truthful information from the insured, filled out the application form falsely or incorrectly, and failed to ask the insured to read it before signing. The insurer was not permitted to avoid the policy. In the instant case, as in Schwartzer, it appears that the trial court found no intent to deceive. If, as it appears, the trier of fact in this case believed the testimony of the plaintiff that the insured provided truthful information to the defendant concerning his health, including showing all of his medications to the defendant’s health examiner, the facts here are quite similar to the facts found in Schwartzer. The record evidence also supports the trial court’s finding that the insured was given no reason to believe that his contract of insurance was any different than it had been in the past based on the consistency in cost. The record demonstrates that there was no noticeable change in the cost of the premium from the time that the insured was initially examined by the defendant for purposes of determining his insurability to the renewal based on the incorrect information recorded by the agent.
The Supreme Judicial Court in Schwartzer expressly refused to nullify the application of the doctrine of equitable estoppel in cases such as this. Acknowledging that the particular circumstances of a case may be such as to excuse the insured’s failure to read the policy (or application) he receives from the company’s agent, the SJC set forth in a footnote, the following:
... Underlying these holdings is a recognition of the everyday practice of the purchaser of insurance. He seldom reads the policy and application, either because he cannot understand its detailed and technical terms, or because of a failure to realize its importance. He is merely interested in buying ‘protection,’ and he tends to rely on the good faith and skill of the insurer’s agent, who is presumably an expert in such matters. ... The [application of a rule that in effect wipes out the equitable estoppel doctrine] may lead to harsh decisions depriving the innocent careless of the ‘protection’ they think they have purchased.
354 Mass, at 330, fn. 3. As the court also noted, “control... lies to a substantial extent within the insurer’s power in the modification of procedures for obtaining and submitting applications.”
The defendant’s policy of having its agents fill out the application on behalf of the insured speaks volumes concerning the company’s perception of the cognitive skills and ability of the individuals subject to such door-to-door “cold calls” as resulted in the issuance of the instant life insurance policy. To now rely on an argument that the same insured — who could not be expected to properly fill out his own application — must be presumed to have read it, is disingenuous. In view of the nature and duration of the relationship of the plaintiff, the insured, and the defendant’s agent in this case, the record supports the trial court’s conclusion that the insured justifiably relied on Mr. Silva’s assurance that everything was in order. It would be unfair to permit the insurance company to avoid a contract of insurance because of the failure of the insurer’s own agents to correctly record or communicate information which was provided to them by the insured. The agent’s negligence is imputable to the insurer. Southeastern Insurance Agency, Inc. v. Lum *4 bermens Mutual Insurance Co., 38 Mass. App. Ct. 642, 645 (1995).
The defendant’s final claim of error relates to the trial court’s permitting the plaintiffs prior attorney to testify about a conversation he had with Mr. Silva, in which Silva allegedly expressed his opinion that the policy should have been paid by the defendant. We do not address this issue at length for several reasons, the foremost of these being that even if it was error to admit the testimony, the error was harmless. The defendant has not demonstrated that the alleged statement made a material difference to the outcome of the case. See, e.g., Foreign Car Center Inc., et. al. v. Salem Suede, Inc., 40 Mass. App. Ct. 15, 23 (1996). This matter was tried to the court and not to a jury. We assume that the trial court was capable of disregarding evidence — even more so than juries which are routinely instructed to do so — if it determined that the evidence was immaterial, irrelevant, or beyond the scope of the spokesperson’s authority.
The judgment for the plaintiff is, therefore, affirmed.